COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Willis and Overton
Argued at Norfolk, Virginia

ELIZABETH SANDIDGE JONES

OPINION BY
v.          Record No. 1675-97-1          JUDGE JOSEPH E. BAKER
FEBRUARY 24, 1998
STEVEN MARVIN JONES

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge

Paul M. Lipkin (Goldblatt, Lipkin & Cohen,
P.C., on brief), for appellant.

Glenn R. Croshaw (Mark D. Stiles; Willcox &
Savage, P.C., on brief), for appellee.


Elizabeth Sandidge Jones (wife) contends that the Circuit
Court of the City of Virginia Beach (trial court), in a decree of
divorce, erroneously disregarded the recommendations of the
commissioner in chancery to whom the matter had been referred.
The issues on appeal are whether the trial court erroneously (1)
awarded physical custody of the parties' two minor children to
Steven Marvin Jones (husband), without first determining that the
commissioner's recommendation of joint physical custody was
unsupported by the evidence and (2) reduced the amount of wife's
attorney's fees to be paid by husband from $2,500 to $1,000, also
without finding the commissioner's recommendations unsupported by
the evidence. For the reasons that follow, we reverse the
judgment appealed from and remand this cause for further
consideration consistent with this opinion.

There is little, if any, disagreement over the facts upon

which the commissioner's recommendation was made.  The parties married on September 25, 1988.  A son was born of the marriage in 1989, and husband adopted wife's daughter, who had been born in 1985.  By agreement of the parties, wife stayed home to care for the children rather than working during the marriage.  The parties separated in the fall of 1995.  Pursuant to a <u>pendente lite</u> order entered March 11, 1996, and a revised decree <u>pendente lite</u> entered March 22, 1996, the parties exercised joint legal custody of the children, with wife having primary physical custody.  The revised decree provided husband with visitation during specific hours on alternate weekends and each weekday afternoon.

Although wife preferred to stay home to care for the children, the trial judge told her to get a job, and she began working as a glass blower, which necessitated a change in the custody/visitation arrangements.  Her job required her to be at work between 7:00 a.m. and 7:30 a.m., but her children did not have to be at school until 8:20 a.m.  Husband worked nights at the Ford Motor Company plant from midnight to 8:30 a.m. and did not arrive home until 8:45 a.m. or 9:00 a.m.  Wife made arrangements to get the children up between 6:30 a.m. and 7:00 a.m. and take them, still in their pajamas, to Frances Hart, the mother of husband's cousin, whom wife paid to feed and dress the children for school.  Wife followed this practice so the children could obtain as much sleep as possible.  Mrs. Hart continued this

routine for about a month.  She stopped the practice because she "didn't want to be in the middle" between husband and wife.

Thereafter, the parties arranged for wife to take the children to husband's house each morning, where husband's live-in nanny fed and dressed the children and took them to school. Husband slept only three and one-half to four hours per night, from 7:30 p.m. or 8:00 p.m. until getting up at 11:30 p.m. to be at work at midnight.  He was awake and present when the children arrived home from school each day around 3:00 p.m.  Husband helped the children with their homework and fed them dinner. Wife picked the children up after work between 5:15 p.m. and 7:00 p.m., bathed them, and spent "a couple of hours in the evening [with them] . . . before they [went] to bed" at her residence. During the summer months, a baby-sitter came to wife's home to stay with the children from the time wife went to work at 6:30 a.m. or 7:00 a.m. until husband picked them up on his way home from work around 8:30 a.m.

While the children were staying predominantly with husband, he and his mother obtained medical attention for son that resulted in diagnosis of an eye-tracking problem.  Son had previously been improperly diagnosed with attention deficit disorder.  Once the misdiagnosis was corrected, husband retained a tutor, and son made the honor roll for the first time.

The Social Services report of August 2, 1996 indicates that daughter "felt like a 'ping pong ball' going back and forth

between her parents' homes" and that son said, "It's not good to have two homes."

Husband testified that he earned $69,000 in 1996 (yielding a gross monthly income of $5,750) but indicated that he planned to eliminate all overtime hours, which would reduce his gross monthly income to $3,857. He claimed monthly expenses of $5,624. Wife began working on January 16, 1996 and earned a total of $15,684 during 1996. She claimed monthly expenses of $1,898.

Wife's counsel submitted an itemized statement of attorney's fees, showing fees of $5,325 for 40.4 hours of time, and costs of $420.25, for a total of $5,745.25. Husband presented no rebuttal evidence on the fee issue.

In his report of March 7, 1997 and amended report of March 11, 1997, the commissioner recommended, inter alia, that the parties have joint legal and physical custody of the children and detailed precisely how the physical custody was to occur. He also recommended that husband pay $2,500 of wife's attorney's fees. In ruling on the issue of child support, he found that husband had a gross monthly income of $5,750 and wife an income of $1,421.

Husband filed exceptions to the custody and attorney's fee recommendations, and both were sustained without comment by the trial court.[1] The court granted husband primary physical custody

_____

[1] The court noted only that it "made its own conclusions as to the appropriate relief required," having "given due weight to the report of the commissioner . . . [and] the factors listed . . . in Code . . . Sections 20-107.2 and 20-124.1, et seq."

- 4 -

of the children with "liberal visitation" to wife, "including but not limited to one overnight each week."  The court also reduced the attorney's fees to be paid by husband from $2,500 to $1,000.  Wife specifically objected to these rulings in her endorsement of the final decree and noted her appeal to this Court.

There can be no dispute in this matter that both husband and wife are fit and proper parents and each sought to achieve what they believed to be the best interests of the children.  Where both parents are regularly employed and have children of tender years, trial judges have difficulty making an award satisfactory to both parties.  Recent legislation concerning joint custody has not decreased the difficulties faced by trial judges.  See, e.g., 1994 Va. Acts ch. 769 § 1 (deleting provision in Code § 20-107.2 that "court may give consideration to joint custody or sole custody" and enacting Code § 20-124.2(B), which provides that court "may award joint custody or sole custody" but "shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children").

In the absence of limited jurisdiction family courts, referrals to commissioners in chancery are necessary to assist trial courts with their large domestic caseloads.  The referral system has resulted in the development of judicial principles establishing the weight to be given commissioners' recommendations.  The Virginia Supreme Court has clearly stated,

and often repeated, the principles governing appellate review of a chancellor's decree that has set aside a commissioner's report:

> While the report of a commissioner in chancery does not carry the weight of a jury's verdict, Code § 8.01-610, <u>it should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence</u>. This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence . . . . [W]here the chancellor has disapproved the commissioner's findings, this Court must review the evidence and ascertain whether, under the correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court. Even where the commissioner's findings of fact have been disapproved, an appellate court must give due regard to the commissioner's ability, not shared by the chancellor, to see, hear, and evaluate the witnesses at first hand.

<u>Hill v. Hill</u>, 227 Va. 569, 576-77, 318 S.E.2d 292, 296-97 (1984) (citations omitted) (emphasis added); <u>accord</u> <u>Yeskolski v. Crosby</u>, 253 Va. 148, 152-53, 480 S.E.2d 474, 476 (1997); <u>Jarvis v. Tonkin</u>, 238 Va. 115, 121-22, 380 S.E.2d 900, 904 (1989); <u>Morris v. United Va. Bank</u>, 237 Va. 331, 337-38, 377 S.E.2d 611, 614 (1989); <u>Sprott v. Sprott</u>, 233 Va. 238, 240, 355 S.E.2d 881, 882 (1987); <u>see also</u> <u>Goetz v. Goetz</u>, 7 Va. App. 50, 53, 371 S.E.2d 567, 568-69 (1988); <u>Robinson v. Robinson</u>, 5 Va. App. 222, 225-26, 361 S.E.2d 356, 357-58 (1987).

Applying those principles to the case before us, we see nothing in this record showing the trial court found insufficient evidence to support the commissioner's recommendation that the best interests of the children would be served by continuing

joint custody, in keeping with recent legislation encouraging joint custody in appropriate cases. We conclude from our review of the record that the trial court, for reasons not disclosed, simply preferred to make a different ruling. This is not to say there is no evidence to support the trial court's conclusion. However, the commissioner's report came to the trial court with a presumption of correctness, see Dodge v. Dodge, 2 Va. App. 238, 241, 343 S.E.2d 363, 364 (1986), and the trial court made no finding that the commissioner's report was unsupported by the evidence. Cf. Robinson, 5 Va. App. at 226-27, 361 S.E.2d at 358 (in visitation case, remanding for additional findings where, inter alia, "judge's oral opinion . . . does not reflect a consideration of the role of the commissioner in weighing the testimony . . . given in her presence . . .").

Because the record here fails to show that the evidence does not support the commissioner's report, and because from our review of that report it appears that it does, we reverse that portion of the decree that awards physical custody of the children to husband, contrary to the commissioner's report, and remand that issue for further consideration consistent with this opinion. For that same reason, based on an absence of findings supporting deviation from the commissioner's recommendation, we remand the issue of attorney's fees.

Nothing in this opinion should be construed to preclude the trial court from modifying custody and support awards upon a

proper showing of changed circumstances.

<u>Reversed and remanded.</u>