COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Senior Judge Baker
Argued at Richmond, Virginia


VIRGINIA PARKER BROWN
                                              OPINION BY
v.   Record No. 1937-98-2            JUDGE JOSEPH E. BAKER
                                           OCTOBER 5, 1999
JOSEPH B. BURCH
and
DAVID KELLEY McNISH, III


        FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                    Edward L. Hogshire, Judge

         Charles R. Jaeger for appellant.

         Patricia M. Brady for appellee.


    Virginia Parker Brown (Brown) appeals from a judgment of

the Circuit Court of the City of Charlottesville (circuit court)

that granted joint custody of Robert Parker McNish (Rob), then

age twelve,[1] to his stepfather, Joseph B. Burch (Burch), and to

his father, David Kelley McNish, III (McNish).[2]  The circuit

court's order awarded physical custody of Rob to Burch.  Brown

contends the circuit court never obtained personal jurisdiction

over her, that the circuit court abused its discretion when it

took Rob's testimony in camera without counsel present, and that

the court erred when it awarded physical custody of Rob to

_____

        [1] Rob was born on April 22, 1986.

        [2] McNish and Burch are also collectively referred to herein
as "appellees."

Burch, with McNish being granted joint custody.  Burch and McNish assert on cross-appeal that the circuit court erred by not awarding them attorneys' fees.  See Rule 5A:21.  For the following reasons, we affirm the trial court.

## I.   Personal Jurisdiction

On April 17, 1992, appellees filed petitions in the Charlottesville Juvenile and Domestic Relations District Court (juvenile court) seeking permanent custody of Rob.[3]  On July 1, 1992, Brown filed twenty-one separate motions in the juvenile court in response to appellees' petitions.  In addition to motions challenging the juvenile court's in personam jurisdiction, wherein Brown indicated that she was appearing specially, Brown filed the following motions:  1) to transfer venue to the City of Waynesboro (in response to Burch's and McNish's petitions); 2) to disqualify the guardian ad litem (in response to Burch's and McNish's petitions); 3) to disqualify attorney Susan White from representing both Burch and McNish (in response to Burch's and McNish's petitions); 4) for a continuance (in response to Burch's and McNish's petitions); 5) to strike Burch's petition on the ground that it sought

---

[3] Burch and McNish had previously filed petitions for temporary custody of Rob.  In their April 17, 1992 petitions, McNish and Burch asked that they be granted joint custody of Rob, with Burch being awarded physical custody of the boy.  The juvenile court subsequently consolidated Burch's and McNish's petitions.

-

placement of Rob with a non-party to Burch's suit, namely McNish; and 6) a demurrer to Burch's petition on the ground that Burch was not Rob's natural father.

The juvenile court ruled that it had in personam jurisdiction over Brown, and on August 12, 1992, the court entered a final decree awarding joint custody of Rob to Burch and McNish, with Rob's physical residency being with Burch. Brown filed a timely appeal to this decree and re-asserted her jurisdictional challenges in the circuit court. At a March 3, 1997 hearing, Brown testified that she was never served with McNish's or Burch's custody petitions.

Brown concedes that she filed pleadings that went beyond merely challenging the juvenile court's jurisdiction. She asserts, however, that under Code § 8.01-277, she was entitled to appear specially and generally, without waiving personal jurisdiction. We disagree.

Under the common law, an appearance for the purpose of taking advantage of the lack of process had to be by special appearance, and the party had to expressly state that he or she was appearing specially. See 2A Michie's Jurisprudence, Appearances § 13 (1993 Repl.). The party had to "be particular not to allow the appearance to assume such shape as [would] admit the jurisdiction of the court." Burks Pleading and Practice § 47, at 100 (4th ed. 1952).

-

"If a defendant appears generally and defends on the merits, or makes or accepts a motion for a continuance, or makes any other motion which does not involve the question of the court's jurisdiction, he thereby waives all defects in process and the return thereon."  Id.  See Shepherd v. Starbuck, 118 Va. 682, 684, 88 S.E. 59, 60 (1916).  "'Any action on the part of defendant, except to object to the jurisdiction, which recognizes the case as in court, will amount to a general appearance.'"  Maryland Casualty Co. v. Clintwood Bank, Inc., 155 Va. 181, 186, 154 S.E. 492, 494 (1930) (citation omitted).

Enacted in 1977, Code § 8.01-277 modified the common law rule by providing that "[a] person, upon whom process to answer any action has been served, may take advantage of any defect in the issuance, service or return thereof by a motion to quash filed prior to or simultaneously with the filing of any pleading to the merits."  Because Code § 8.01-277 is in derogation of the common law, it must be strictly construed.  See Gilpin v. Joyce, 257 Va. 579, 582, 515 S.E.2d 124, 126 (1999).

In Gilpin, the plaintiff filed a personal injury lawsuit in 1996, but did not request service of process on the defendant. More than one year later, the defendant filed a motion to dismiss pursuant to Rule 3:3,[4] and simultaneously filed a series

---

[4] Rule 3:3 provides:  "No judgment shall be entered against a defendant who was served with process more than one year after the commencement of the action against him unless the court

-

of motions addressing the merits of the plaintiff's motion for judgment. The trial court dismissed the plaintiff's action pursuant to Rule 3:3. See id. at 580-81, 515 S.E.2d at 125. On appeal, although conceding that he had made a general appearance before the circuit court, the defendant contended that Code § 8.01-277 allowed him to appear generally without waiving his Rule 3:3 motion to dismiss. See id. at 581-82, 515 S.E.2d at 125-26.

In rejecting defendant's position, the Supreme Court held that Code § 8.01-277 did not apply where the party seeking to invoke it had not been served with process. See id. at 582, 515 S.E.2d at 126. Because the defendant had made a voluntary, general appearance, he had subjected himself to the circuit court's jurisdiction. See id. In recognizing that the defendant was being treated differently than defendants who were served with process, the Court explained: "We believe that this is the very distinction the legislature intended to create when it enacted Code § 8.01-277 permitting only a defendant who has been actually served with process to raise specific jurisdictional challenges prior to or simultaneously with the filing of any pleading to the merits." Id. at 583, 515 S.E.2d at 126.

---

finds as a fact that the plaintiff exercised due diligence to have timely service on him."

-

We hold that Gilpin is dispositive of the present case. Brown concedes that she appeared both specially and generally before the juvenile court. Furthermore, Brown testified, and the circuit court found, that she was never served with the process for the custody petitions. Accordingly, when Brown entered a general appearance before the juvenile court, in addition to her special appearance, she subjected herself to the jurisdiction of that court.[5]

## II. Taking Rob's Testimony In Camera

The guardian ad litem advised the trial court that Rob wanted to speak with the court on the custody issue. Both the guardian ad litem and appellees indicated a preference that Rob be questioned by the court in camera. Appellant objected to the court questioning Rob out of the presence of counsel.

As of June 1998, when the circuit court heard evidence on the custody issue, this matter had been pending before the City of Charlottesville courts for over six years. Brown had filed approximately twenty-one motions in the juvenile court, which she renewed in the circuit court, in her attempt to retain custody over Rob. She had moved for the replacement of the guardian ad litem on the ground that he was biased, and counsel for Brown had informed Brown that she should not discuss the

_____

[5] Because we hold that the juvenile court obtained personal jurisdiction over Brown, we do not address the propriety of the circuit court's efforts to cure the perceived lack of jurisdiction.

-

case with the guardian ad litem.  Brown had also moved that attorney Susan White be disqualified from representing Burch and McNish simultaneously.

Counsel for appellees had filed a motion for sanctions against Brown's counsel, and also a June 1997 motion to review visitation.  The latter motion was instigated by an incident where Brown had prevented Rob from attending an out-of-state hockey camp against Rob's wishes, and despite the fact that Burch had already purchased Rob's plane ticket.[6]

Craig Villalon, a licensed clinical social worker, met with Rob on four occasions.  Although he testified that Rob was stable and well-adjusted, Villalon believed that Rob would feel "very uncomfortable" if he had to testify in open court. Villalon testified that the custody dispute had been "extremely stressful" for Rob and that Rob would feel "conflicted" testifying because he did not want to appear disloyal to his mother.

---

[6] The evidence at the hearing on the motion established that on the weekend of the trip, Rob went for his scheduled visitation with Brown, that Brown went out of town and left Rob with his maternal grandfather, that the maternal grandfather had not allowed Rob to use the telephone to contact Burch, and that the grandfather had prevented Rob's return, thus causing the boy to miss the hockey camp.  In explaining to the circuit court why she had prevented Rob from attending the camp despite the fact that she would not be spending any time with the boy, Brown testified:  "[I]t was time to take a stand."

-

The circuit court ruled that it would take Rob's testimony in camera, without the presence of counsel. Brown did not object to Rob's testimony being taken in camera, but asserted that her attorney should be present. In overruling Brown's objection, the trial court stated:

> I have decided that I'm going to talk to the child alone, in part based on the recommendation of the guardian ad litem, and partly based on what I have seen in terms of the acrimony being generated in the courtroom and the degree of tension, the duration of the dispute, [and] the kind of pressure that this will inevitably have on a young man of that age. He's 12 years old. Apparently he's a wonderful, superstar young man. At the same time this has got to be a very painful thing for him. And it's my judgment at this time that the best way to handle this would be for me to interview him in chambers in the presence of the court reporter.

Neither party accepted the court's subsequent invitation to proffer any questions that they wished to have asked of Rob. The court reporter recorded and prepared a transcript of the circuit court's conversation with Rob.

> No person who is a party to a [child custody] proceeding-litigant, counsel, or chancellor-relishes the spectacle of a child testifying in open court as to his or her preference for one parent over another. Accordingly, the preferred method of receiving such evidence in the majority of jurisdictions is to obtain the child's views in an in camera interview.

Haase v. Haase, 20 Va. App. 671, 680-81, 460 S.E.2d 585, 589 (1995) (citations omitted).

-

In *Haase*, the trial court, over the father's objection, conducted an *in camera* interview of the children who were the subject of the custody dispute. The parties' attorneys were not present. In affirming the trial court, we recognized that a parent must be accorded the benefits of due process in a custody dispute. See *id.* at 681, 460 S.E.2d at 589. "Nonetheless, '[i]n any child custody decision, the lodestar for the court is the best interest of the child,' and the due process rights of the parents must be tempered by this guiding principle." *Id.* at 681, 460 S.E.2d at 589-90 (citation omitted).

We declined to adopt a bright-line rule for determining when a commissioner or chancellor could conduct *in camera* interviews of children without the presence of counsel.

> Rather, in determining how to proceed with the receipt of evidence from children in custody cases, the judicial officer . . . should consider the facts and circumstances of the particular case. Among the factors to be considered are the age and maturity of the children, the matters to be brought forth in their testimony, the acrimony between the parents, and the likelihood of improper influence by one or both of the parents on the children's testimony. Based upon the consideration of these factors and others as may be appropriate, the judicial officer should then determine the method of receiving evidence which serves the best interest of the children while preserving to the greatest extent possible the procedural rights of the parents.

*Id.* at 682, 460 S.E.2d at 590 (footnote omitted).

-

The record reflects that the dispute over Rob's custody was contentious, acrimonious, and had dragged on for more than six years.  The purpose of taking twelve-year-old Rob's testimony was to hear from him whether he preferred to live with his mother or his stepfather.  Although the circuit court questioned Rob alone, the court offered the parties the opportunity to proffer any questions they wished to have asked of Rob, and the in camera proceedings were recorded and transcribed.  Accordingly, considering the totality of the circumstances present in this case, we hold that the circuit court did not abuse its discretion.

### III.  Sufficiency of the Evidence

We review the evidence in the light most favorable to Burch and McNish, the parties prevailing below, and grant to them all reasonable inferences fairly deducible therefrom.  See Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).

So viewed, the record discloses that Burch married Brown in the summer of 1989.  Rob was three years old at the time, but Burch testified that he had frequent contact with the boy "beginning when [Rob] was about one year of age and gaining in frequency until Mrs. Brown and I were married."  Burch described himself as Rob's primary caretaker during the marriage.  He testified that Brown would often return home from work intoxicated, and on one occasion, Burch came home to find Brown

-

using cocaine in the bathroom with another man while Rob played elsewhere in the house.

In January 1992, Brown took Rob and moved in with Bruce Gray. In April 1992, suspecting that Gray had physically abused Rob, appellees filed petitions seeking temporary, joint custody of Rob. Less than two weeks later, they filed petitions seeking permanent, joint custody of Rob.

The juvenile court awarded joint custody of Rob to appellees on August 12, 1992, and, although Brown filed a timely appeal, she took no further action in the matter until filing a praecipe with the circuit court on November 21, 1996. During this period of time, Rob continuously resided with Burch.

The parties presented a significant amount of evidence regarding the positive nature of their relationships with Rob. By all accounts, Rob excelled in academics, music, and athletics. He was involved in band, scouting, and organized sports. Burch was actively involved in all aspects of Rob's development.

McNish testified favorably regarding Burch's parenting skills, stating that he knew "that Rob's best interests are the number one priority of [Burch]." McNish further stated that under the current custody arrangement he had virtually unrestricted access to Rob, which allowed him to develop a better relationship with Rob than he had been able to do when

Brown had custody of the boy.  McNish noted that, after Brown left Burch, she had attempted to prevent Burch from seeing Rob.

Brown also presented evidence regarding her fitness as a parent.  Indeed, the circuit court noted that Brown had "made an impressive, . . . positive turn in her life. . . .  I think she's used major initiatives as a non custodial parent to stay involved with this young man."

Villalon testified that Rob was "extremely stable, reliable, hardworking, [and] well-adjusted."  He further testified that Rob had expressed to him a desire to remain with Burch.  Villalon believed that, although Rob was well-adjusted, a change in custody could result in situational depression.  He explained that Rob was "at a developmental stage of his life.  Stability is very important to him."  Villalon concluded that a change in custody "would be counterproductive for [Rob] psychologically and emotionally."  Villalon also stated that Rob was mature enough to make a judgment about what was best for him.

During his interview with the judge, Rob expressed his happiness with his current living conditions.  He expressed concern about having to move to a new location, changing schools, and having to make new friends.[7]  He described his

---

[7] Brown was living in Waynesboro at the time.  Rob told Villalon that, even if Brown was to move to Charlottesville, he wished to remain with Burch.

-

relationships with Burch and McNish as "great." He also advised the court that he enjoyed a good relationship with Brown, her husband, and his two half-sisters. Rob concluded: "I would like to stay in Charlottesville [with Burch], you know, same thing that's been going on, same visitation and stuff, because I mean everything's been working out fine."

The guardian ad litem recommended to the trial court that Burch and McNish be awarded joint custody, arguing that it was in Rob's best interest and re-iterating that it was consistent with Rob's wishes.

In announcing its ruling, the circuit court noted that Rob "did make it clear that he did not want a change in his current situation. He said he liked things the way they were." The judge stated that he was "very much impressed with" Rob and that "[h]e's obviously a remarkable young man."

The circuit court did not find that Brown was unfit. Rather, the court noted:

> What we have before us today, however, is the issue of changing [Rob's] custodial arrangement in the middle of a situation where this young man has done not just well, he's done off the charts, according to everybody's testimony. I haven't heard any evidence how a change of custody would improve on how he's done, [or] that there is some deficiency that needs to be corrected in his emotional stability or his mental health, [or] physical health.

The court further found that Rob had "been apparently incredibly well cared for" by Burch. The circuit court awarded custody of

Rob jointly to Burch and McNish, finding that it was in Rob's best interest to do so.

"In issues of child custody, 'the court's paramount concern is always the best interests of the child.'" Vissicchio v. Vissicchio, 27 Va. App. 240, 246, 498 S.E.2d 425, 428 (1998) (quoting Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990)). See Code § 20-142.2(B). "Because the trial court heard the evidence at an ore tenus hearing, its decision 'is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it.'" Piatt v. Piatt, 27 Va. App. 426, 432, 499 S.E.2d 567, 570 (1998) (citation omitted). "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to an appellate court with a presumption that the law was correctly applied to the facts." Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995).

In determining the best interests of the child, the trial court must consider the statutory factors identified in Code § 20-124.3. "The court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest." Code § 20-124.2(B). A stepparent is considered a person with a legitimate interest. See Code § 20-124.1.

-

"[T]he wishes of a child who has reached the age of discretion, though not controlling, should be considered [by the trial court] and given appropriate weight."  Bailes v. Sours, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986).  See Code § 20-124.3(7) (in determining the best interests of the child, the court "shall" consider "the reasonable preference of the child").  Likewise, "the recommendation of the guardian ad litem . . ., while not binding or controlling should not be disregarded."  Bottoms, 249 Va. at 420, 457 S.E.2d at 108.

"'In a custody dispute between a parent and non-parent, the law presumes that the child's best interests will be served when in the custody of its parent.'"  Id. at 413, 457 S.E.2d at 104 (quoting Judd v. Van Horn, 195 Va. 988, 996, 81 S.E.2d 432, 436 (1954)).  "Although the presumption favoring a parent over a non-parent is a strong one, it is rebutted when certain factors are established by clear and convincing evidence."  Bailes, 231 Va. at 100, 340 S.E.2d at 827 (footnote omitted).  "[I]n the absence of a showing of unfitness of the parent, special facts and circumstances must be shown constituting an extraordinary reason for taking a child from its parent, or parents."  Wilkerson v. Wilkerson, 214 Va. 395, 397-98, 200 S.E.2d 581, 583 (1973).  "[W]hile the legal rights of a parent should be respected in a custody proceeding, those technical rights may be disregarded if demanded by the interests of the child."  Bottoms, 249 Va. at 419, 457 S.E.2d at 108.

-

"The initial burden is on the nonparent to introduce clear and convincing evidence at trial of facts and circumstances which constitute an 'extraordinary reason' for depriving a natural parent of custody of her or his child."  Mason v. Moon, 9 Va. App. 217, 223, 385 S.E.2d 242, 246 (1989) (quoting Patrick v. Byerley, 228 Va. 691, 694, 325 S.E.2d 99, 101 (1985)).  "'Such evidence . . . must be cogent and convincing.'"  Elder v. Evans, 16 Va. App. 60, 65, 427 S.E.2d 745, 748 (1993) (quoting Judd, 195 Va. at 996, 81 S.E.2d at 436).  "Once the presumption favoring parental custody has been rebutted, the parental and non-parental parties stand equally before the court, with no presumption in favor of either, and the question is the determination of the best interests of the child according to the preponderance of the evidence."  Walker v. Fagg, 11 Va. App. 581, 586, 400 S.E.2d 208, 211 (1990).

As a preliminary matter, we must determine the burden and quantum of proof involved in deciding the custody issue.  If this was a contest solely between Brown and Burch, Burch would have had to prove by clear and convincing evidence that he should be granted custody.  If the contest was solely between Brown and McNish, no presumption would arise in favor of either parent.  Appellees contend that, because of McNish's involvement, this case should be treated as if it were between two natural parents.  We disagree.

-

In Wilkerson, in a custody dispute between a mother and a father, after finding that the mother was unfit, the trial court awarded custody of the child to the mother's relatives, with whom the child had been living temporarily.  See Wilkerson, 214 Va. at 395-96, 200 S.E.2d at 582.  The court found, by a preponderance of the evidence, that the child's best interests were served by awarding custody to the mother's relatives instead of the father.  See id. at 397, 200 S.E.2d at 583. Despite the mother's at least tacit agreement with the trial court's custody ruling--the relatives were not a party to the suit--the Supreme Court held that this was a contest between a parent and non-parents, and the mother had the burden of proving with clear and convincing evidence that the father should be denied custody.  See id.  See also Brooks v. Carson, 390 S.E.2d 859, 865 (Ga. App. 1990) ("If a third party obtains custody from one parent, it gives her no right and no advantage against the other parent, for one parent cannot contract away custody of the child to a third party in avoidance of the other parent's rights.").

The present case is distinguishable from Wilkerson because McNish is not unfit, and he is seeking joint custody of Rob. Nevertheless, McNish's involvement as a party seeking joint, but not physical custody of Rob does not allow Burch to transcend his status as a non-parent.  Accordingly, we hold that Burch and

-

McNish had the burden of proving by clear and convincing evidence why Brown should be denied custody of Rob.

In Bailes, the Supreme Court addressed the issue of special and extraordinary circumstances that would justify an award of custody to a non-parent. There, the parents had separated in 1972 when the child was one year old, and the father assumed custody of the child. The father married Sours in 1975, and died in 1983, whereupon the mother sought custody of the child from Sours. See Bailes, 231 Va. at 97-98, 340 S.E.2d at 825. In finding clear and convincing evidence rebutting the presumption that the child's best interests would be served by awarding custody to his natural mother, the Court noted: 1) the mother was "virtually a 'stranger to her son'" and that she had not seen the boy for four years before the father's death; 2) the child had developed a close relationship with Sours; 3) the child had resided with Sours for approximately ten years; 4) the child expressed a desire to remain with Sours; and 5) expert testimony was presented that transferring custody to the mother would have a serious negative impact on the child's health and well-being. Id. at 101, 340 S.E.2d at 827 (citation omitted).

The circumstances that might justify denying a parent custody of his or her child in favor of a non-parent will vary from case to case. In determining whether exceptional circumstances exist that justify awarding custody of a child to a non-parent, courts in other states have utilized factors

-

similar to those relied upon in Bailes.  In Ross v. Hoffman, 372 A.2d 582 (Md. 1977), some of the factors the court considered included:  1) the age of the child when care was assumed by the non-parent; 2) the period of time elapsed between the parent's loss of custody and his or her attempt to regain custody; 3) the intensity and genuineness of the parent's desire to obtain custody of the child; and 4) the stability and certainty of the child's future in the parent's custody.  See id. at 593-94.  See also Locklin v. Duka, 929 P.2d 930, 935 (Nev. 1996) (including in the factors to be considered whether "the child's well-being has been substantially enhanced under the care of the non-parent").

A number of factors justified the trial court's ultimate award of joint custody to Burch and McNish.  Rob had continuously lived with Burch for six years at the time of the custody hearing, and has now been in Burch's custody for more than seven years.  The record reflects that, under Burch's guidance, albeit with input from both McNish and Brown, Rob has excelled in athletics, music, and academics.  Rob is extraordinarily well-adjusted and displays a marked level of maturity for someone his age.  He expressed a desire to remain in Burch's physical custody, and the guardian ad litem concurred that this was in Rob's best interest.  Moreover, a mental health professional testified that Rob's well-being would be adversely affected if the circuit court transferred custody to Brown.

-

Despite filing a timely appeal to the circuit court in August 1992, Brown took no legal action to overturn the juvenile court's order for more than four years.  We note that during the time Burch has had custody, there has been no evidence that he has interfered with Brown's visitation rights or her relationship with Rob.  Additionally, Rob's relationship with his father has flourished under the current arrangement.  On the other hand, the court heard evidence that after Brown left Burch in January 1992, she attempted to prevent Burch from seeing Rob.  See Code § 20-124.3(6) (the court must consider "[t]he propensity of each parent to actively support the child's contact and relationship with the other parent").

This case is particularly unique because this is not merely a custody dispute between Brown and Burch.  Rather, the dispute is between Brown and Burch and McNish.  While McNish is not seeking physical custody of Rob, he is seeking "joint responsibility for the care and control of [Rob] and joint authority to make decisions concerning [Rob]."  Code § 20-124.1 (defining joint custody).  To trivialize McNish's sought-after role is to ignore the importance the General Assembly attaches to joint custody arrangements.  See Code § 20-124.2(B); Jones v. Jones, 26 Va. App. 689, 694-95, 496 S.E.2d 150, 153 (1998) (noting that recent changes to Code § 20-124.2 had the effect of encouraging joint custody in appropriate cases).

-

Although each dispute concerning custody and visitation presents unique circumstances--shown by this case in particular--the trial court's judgment in every case is guided by a single, unvarying standard that the welfare of the child is the primary, paramount, and controlling consideration of the court. All other matters are subordinate. See Mullen v. Mullen, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948). The trial court's decision whether it was to the best interest of Rob was within its discretion and is reversible only upon a showing that the court abused its discretion. See Vissicchio, 27 Va. App. at 246, 498 S.E.2d at 428; M.E.D. v. J.P.M., 3 Va. App. 391, 398, 350 S.E.2d 215, 220 (1986).

Having considered the totality of the circumstances present in this case, we hold that the record contains clear and convincing evidence of special and unique circumstances that justified the circuit court in denying Brown custody of Rob. We further hold that the trial court did not err when it found that Rob's best interests were served by granting joint custody to Burch and McNish, with Burch retaining physical custody of the boy.

## IV. Attorneys' Fees

Whether to award a party or parties attorneys' fees is a matter left to the discretion of the trial court. See Fairfax County v. Donald, 251 Va. 227, 229, 467 S.E.2d 803, 804 (1996). Upon our review of the record, including the various pleadings

-

filed by Brown, we cannot say the court abused its discretion in denying appellees' request for attorneys' fees.

Accordingly, the judgment of the circuit court is affirmed.

<u>Affirmed.</u>