COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


AUDRA JANE ACCHIONE

                                           MEMORANDUM OPINION[*] BY
v.       Record No. 2401-05-4              JUDGE JEAN HARRISON CLEMENTS
                                                 AUGUST 22, 2006
GEOFFREY LAWRENCE ACCHIONE


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Arthur B. Vieregg, Jr., Judge

            Mark B. Sandground, Sr. (Sandground New & Lowinger, P.C., on
            brief), for appellant.

            Susan Leslie-Fraser (The DARA Law Group, P.C., on brief), for
            appellee.


       Audra Jane Acchione (mother) appeals from an order of the trial court awarding primary

physical custody of the parties' two minor children to Geoffrey Lawrence Acchione (father).  On

appeal, she contends (1) the evidence was insufficient to support the award of custody, (2) the trial

court abused its discretion by failing to consider all of the factors of Code § 20-124.3, and (3) the

trial court abused its discretion by assuming facts not in evidence.  For the reasons that follow, we

affirm the judgment of the trial court.

       As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

The parties were married on October 28, 1995.  Two children were born of the marriage, a son, R., on April 30, 1997, and a daughter, A., on June 23, 2000.  On August 24, 2004, the parties separated.  Mother instituted a suit for divorce, and the contest for custody over the children ensued.  On September 13, 2004, the trial court entered a *pendente lite* order awarding the parties joint legal and physical custody of both children and granting mother exclusive use of the marital residence.  R. and A. were to reside with mother at the marital residence during the week and with father at his residence on weekends.  On July 19, 2005, a two-day custody hearing commenced before the trial court, at which time the parties presented their evidence.  "[W]e summarize th[at] evidence in the light most favorable to the prevailing party below."  Brown v. Brown, 30 Va. App. 532, 535, 518 S.E.2d 336, 337 (1999).

So summarized, the evidence established the following relevant facts.  R. is eight years old.  Following the parties' separation, he began to have difficulty controlling his anger and emotions.  For example, he became "belligerent," "disrespectful," and "disruptive" toward authority figures, threw tantrums, and destroyed personal property (a DVD player) not belonging to him.  A. is five years old.  She suffers from neither mental nor physical difficulties.  Although A. demonstrated separation anxiety after the parties' separation, her insecurities diminished in the months that followed.

Father is 42 years old, mentally and physically healthy, and employed full-time during the week.  Although he had difficulty maintaining employment during the marriage due to numerous labor force reductions, he consistently retained new employment following these reductions.  Father drinks on a daily basis and frequently does so in front of the children.  No evidence was presented, however, to demonstrate that he suffers from alcoholism or that his drinking has negatively impacted his employment or parenting abilities.

Mother is 37 years old, physically healthy, and employed part-time on weekends. She maintained such employment steadily throughout the marriage. Although she suffers from no mental illness, she has demonstrated conduct that is explosive, impulsive, and self-focused.

The evidence provides numerous examples of such conduct. For instance, on the July 4, 2004 weekend, the parties were involved in a marital dispute. During the dispute, mother repeatedly smashed father's vehicle with a wrench in the presence of R. and A. Father testified to this incident. In a later incident, on August 22, 2004, mother began screaming, kicking furniture, throwing objects around, and verbally assailing father's parents when they declined to leave the marital residence upon her demand. Georgia Acchione, father's mother, and Nichole Acchione, his sister-in-law, testified to this incident.

Father provided additional examples of wife's unseemly conduct. Following the July 4, 2004 incident, father initiated marital counseling for the parties. Mother attended the counseling, but declined to constructively participate, stating to him, "We don't need counseling. This is your problem." Furthermore, mother threatened "hundreds of times" over a "number of years" to divorce father and run away with the parties' children. She uttered these threats when she did not get her way. For instance, she threatened to run away with the children when father refused to place ceiling fans in every room of the marital residence upon her demand. On August 22, 2004, she carried out her threats. Following the dispute that day, mother placed R. and A. in her vehicle and drove to New York. Father did not see the children for three weeks.

Chelsea R. Mahon, a lifeguard, testified that mother came to her swimming pool with the parties' children for R.'s diving meets. During one particular meet, R. was diving from one end of the pool and A. was playing in the other end. As mother watched R. dive, A. fell from her play toy in the pool and began to drift under the water. Chelsea dove into the water to rescue her. After she

rescued A., mother, who was upset, stated in a non-jesting tone, "If she drowns I won't sue." Chelsea testified that this incident constituted the third such rescue of A. while mother was present.

Mother was the primary caretaker of the children during the week and provided parental services necessary for their rearing. She fed, clothed, and groomed the children, attended to their medical needs, and provided transportation to and enrollment in school and extracurricular activities. She also volunteered at the children's schools and actively participated in their academic and social lives. On weekends, father cared for the children. He, too, provided primary parental services, assisted the children with their academics and social activities, and participated therein.

Father related exceptionally well to the children. For example, he regularly engaged in playtime with the children, read them bedtime stories, and participated in activities that were of their particular interest, such as playing video games with R. and drawing with A. Cynthia McDermott, father's sister, testified to this relationship and explained that mother did not relate to the children in this way. Father was also attentive to R.'s weight problem and assisted him with weight loss by going for bike rides with him, playing at parks with him, and feeding him non-junk foods.

Each party hired and provided testimony from a psychological expert, and each expert bolstered the parental abilities and fitness of the hiring party. The evidence demonstrated, however, that father was a more calming and patient disciplinarian with the children. Nichole Acchione testified that father showed follow through with his discipline and was able to calm R. down during his tantrums, which was an "art in itself." She testified that she had once observed mother discipline R. by screaming loudly at him.

R.'s participation in extracurricular activities highlights mother's unilateral decision-making regarding the children. Without consulting father, she enrolled R. in numerous extracurricular activities, which met as often as three to four nights per week. She enrolled him in activities that met when he resided with father. She also enrolled R. in summer camp without discussing the

matter with father. Father protested R.'s participation in numerous extracurricular activities, especially wrestling. He explained that wrestling would contribute to R.'s aggressive conduct and emotional difficulties.

R. and A. are close to one another and have a close relationship with father's extended family, particularly with his parents who live in Virginia. The testimony of Nichole Acchione and Georgia Acchione established that this relationship was very attentive and loving. Father's parents cooked, drew, and played games with the children. Father resides with his parents, and he testified that the children would reside there as well if he was awarded custody. He testified that his parents would assist in the children's care during the week while he was at work. Dr. Leigh Hagan, father's psychological expert who performed a "parental capacity" evaluation of father, testified that father had made "arrangements for the children's care in his absence" and father's "mother would be a resource" for after-school childcare during the week while father was at work.

Having considered these facts, the trial court observed that the award of custody must be "based on the resolution of principally one and only one issue: What is in the best interests of the parties' children . . . ?" In reaching its decision, the trial court noted that it had "taken into account the factors contained in Virginia Code Section § 20-124.3" and an additional factor concerning "the effects of the parties' occupations" on the children. The trial court awarded primary physical custody to father, emphasizing that he had a "greater insight and patience necessary to rear his children" and that "[w]hile [mother] is presumed to be a fit parent, . . . she has very significant personal and emotional problems that detract from her ability to meet the developmental needs of her children at this time." The trial court further ordered mother to begin parenting and anger management classes.

This appeal followed.

II. ANALYSIS

Mother challenges the trial court's award of primary physical custody to father. She contends the evidence was insufficient to support the award, the trial court abused its discretion by failing to consider all of the factors of Code § 20-124.3, and the trial court abused its discretion by assuming facts not in evidence. We disagree.

"In issues of child custody, 'the court's paramount concern is always the best interests of the child[ren].'" Vissicchio v. Vissicchio, 27 Va. App. 240, 246, 498 S.E.2d 425, 428 (1998) (quoting Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990)). "In determining the best interests of the child[ren], the trial court must consider the statutory factors identified in Code § 20-124.3." Brown v. Burch, 30 Va. App. 670, 684, 519 S.E.2d 403, 410 (1999). Code § 20-124.3 enumerates the factors to be considered as follows:

> 1. The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;
> 2. The age and physical and mental condition of each parent;
> 3. The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child;
> 4. The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members;
> 5. The role that each parent has played and will play in the future, in the upbringing and care of the child;
> 6. The propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child;
> 7. The relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child;
> 8. The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference;

9. Any history of family abuse as that term is defined in § 16.1-228. If the court finds such a history, the court may disregard the factors in subdivision 6; and

10. Such other factors as the court deems necessary and proper to the determination.

Although the trial court must consider these factors, "it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)). Rather, "trial courts are vested with broad discretion in making the decisions necessary to guard and to foster [the children's] best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795. "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown, 30 Va. App. at 538, 518 S.E.2d at 338.

## A. Sufficiency of the Evidence

Applying the aforementioned principles, we hold that the evidence was sufficient to support the trial court's award of primary physical custody to father. At the outset, the trial court correctly observed that the award of custody must be "based on . . . the best interests of the parties' children." The trial court then carefully examined the above-summarized evidence as it pertained to the custody factors of Code § 20-124.3. Fulfilling its statutory obligation, the trial court explicitly considered all of the factors of Code § 20-124.3 and further considered, pursuant to its broad discretion under subdivision 10 of the statute, "the effects of the parties' occupations."

Cognizant of the children's best interests, the trial court emphasized certain findings of fact. The trial court emphasized that father possessed a "greater insight and patience necessary to rear his children" and that mother's "very significant personal and emotional problems . . . detract[ed] from her ability to meet the developmental needs of her children." The evidence supports these findings.

- 7 -

The testimonial evidence demonstrated that father possessed a "greater insight and patience necessary to rear his children." Father testified that he protested R.'s participation in wrestling, explaining that such an activity would only contribute to his aggressive behavior and emotional difficulties. Nichole Acchione testified that father was a calm and patient disciplinarian with R. and that he showed "follow through" with the children. Cynthia McDermott testified that father related well with the children. Dr. Hagan, father's psychological expert, opined that father was a fit, patient, and tolerant parent, that he possessed "sufficient insight and understanding about his children's needs, and that he . . . possessed . . . the ability to meet those needs; that is to meet the needs of the children on their own terms." Dr. Hagan further opined that father possessed the qualities necessary to be the primary caretaker of the children.

Furthermore, the evidence demonstrated that mother's "very significant personal and emotional problems . . . detract[ed] from her ability to meet the developmental needs of her children." On numerous occasions, and even in front of the children, she displayed conduct that was explosive, impulsive, and self-focused. The testimonial evidence spoke to these occasions, which included, but were not limited to, the destruction of father's personal property during a dispute, a combative altercation with his family, numerous threats of divorce and running away with the children, the ultimate realization of these threats, a lack of attentive focus for A.'s safety, and explosive disciplinary conduct with a son who had already been demonstrating problematic behavior.

Mother further argues the trial court erred by failing to consider the impact of father's work schedule on his ability to care for the children, that the trial court abused its discretion by ordering her to attend parenting and anger management classes, and that the trial court erred by giving primary weight to the testimony provided by father's witnesses, who were also his relatives. These arguments fail. The record demonstrates that the trial court explicitly considered "the effects of the

parties' occupations" in its Code § 20-124.3 examination, including the impact of father's work schedule on his ability to care for the children. The record also demonstrates that parenting and anger management classes for mother were appropriate based on the evidence presented. Furthermore, assuming the trial court gave primary weight to father's witnesses, the trial court did not err in doing so because "[t]he credibility of witnesses and the weight to be accorded their testimony is a matter exclusively within the province of the trier of fact." Yopp v. Hodges, 43 Va. App. 427, 439, 598 S.E.2d 760, 766 (2004). Acting within this province, the trial court permissibly weighed the testimonial evidence in father's favor.

### B. Code § 20-124.3 Custody Factors

We further hold that the trial court did not abuse its discretion in its consideration of the custody factors of Code § 20-124.3. Mother contends the trial court failed to consider all of the statutory factors prior to awarding custody. Specifically, she argues the trial court failed to consider the "fitness of the parties" and the role that father will play in the future in the upbringing and care of their children. Her arguments are without merit.

The record demonstrates that the trial court considered the aforementioned items. First, the trial court explicitly considered the "threshold" issue of the "fitness of the parties" prior to its Code § 20-124.3 examination:

> The parties have each called expert witnesses who have qualified as such. In evaluating their testimony, I've considered the factual foundation for their opinions, and have considered whether or not their opinions are persuasive in view of that foundation and in view of the explanations for their opinions.
> In the end, generally speaking, each expert has been called to bolster the parenting abilities of the parent who has hired them to afford such an opinion. Both have testified that one or the other parent was a fit parent. That conclusion, however, it seems to me, after listening to arguments of counsel, really was not an issue in dispute. Obviously, they have also afforded additional insights into each of the parties. Lack of unfitness, however, does not much advance the difficult issues before me.

Apparent in this language is the trial court's finding that neither party successfully proved the other party's parental "unfitness." Additionally, the trial court, when addressing mother's emotional problems, stated that "[mother] is presumed to be a fit parent." Given these examples, we conclude that the trial court considered the fitness of the parties.

Furthermore, the trial court considered the role that father has played and will play in the upbringing and care of the children. Indeed, the trial court explicitly considered "factor five" of Code § 20-124.3, which is "[t]he role that each parent played and will play in the future, in the upbringing and care of the child." In addressing this factor, the trial court pointed to father's positive relationship with the children and emphasized that each parent must, in the future, cooperate and communicate with one another for the children's development. The trial court also observed that father was "more capable than [mother] in assessing his children's needs and in meeting their emotional and physical needs" and that father's extended family would assist him in the short-term future with the care of the children while he worked "long hours" during the week. The court noted that father "would see the children" only on weekends and "for a brief period of time in the evenings" during the week.

As we previously noted, the trial court considered all of the statutory factors prior to awarding custody. And, as we also previously mentioned, the court need not have quantified or elaborated what weight or consideration it gave any particular statutory factor. Given the record before us, we hold that the trial court did not abuse its discretion in conducting its Code § 20-124.3 examination.

### C. Assumption of Facts not in Evidence

Finally, mother contends the trial court abused its discretion by assuming facts not in evidence. She asserts the trial court improperly assumed father's mother would care for the parties' children during the week while father was at work even though father presented no

evidence to support that assumption.  Finding ample evidence in the record to support the reasonable inference that father's mother would assist father in caring for his children during the week, we disagree with mother's contention.

Testifying on behalf of father, Dr. Hagan specifically stated that father made "arrangements for the children's care" during his absence on weekdays.  She testified that father's "arrangements" included calling upon his mother for assistance with the children's care.  Additionally, father testified that he discussed the care of his children with his parents and that they were willing to assist while he was at work.  Such assistance was facilitated by the fact that father and the children would reside with the parents and the fact that father's parents had a very close relationship with the children.  Because this evidence supports the trial court's finding, we hold the trial court did not abuse its discretion in declaring that father's "parents will have to become childcare providers. . . .  His mother . . . in the short run can play this role."

III.  CONCLUSION

For these reasons, we affirm the judgment of the trial court.

Affirmed.