COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Annunziata and
Bumgardner
Argued at Alexandria, Virginia


LUIGI DAVID VISSICCHIO
                                      OPINION BY
v.   Record No. 1038-97-3   JUDGE ROSEMARIE ANNUNZIATA
                                      APRIL 28, 1998
MELISSA F. VISSICCHIO

            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                       Donald M. Haddock, Judge

            Glenn C. Lewis (Wendy H. Schwartz; Daniel G.
            Dannenbaum; The Lewis Law Firm, on briefs),
            for appellant.

            Martin A. Gannon (David H. Fletcher; Gannon,
            Cottrell & Ward, P.C., on brief), for
            appellee.


     Luigi David Vissicchio (father) appeals the circuit court's

divorce decree, claiming the court erred in awarding primary

physical custody of Emma Alessandra Vissicchio (Emma) to Melissa

F. Vissicchio (mother), in determining the visitation schedule,

and in calculating child support.  Mother cross-appeals,

contending the court erred in refusing her request to reserve her

right to seek future spousal support.  We affirm on the issues of

child custody, visitation, and child support, and reverse on the

issue of the reservation of the right to seek future spousal

support.

     The parties married on July 3, 1993, and Emma was born on

March 30, 1995.  Emma lived with mother after the parties

separated on November 7, 1995.  The parties agreed that, during

the period of separation, father would have Emma every other weekend and two nights during each week.  Father filed for divorce on February 1, 1996.

In April 1996, father moved to New York.  Mother filed a cross-bill on May 6, 1996.  On July 10, 1996, the parties reached an agreement, which the court entered as a pendente lite order, that the parties would have joint legal custody and alternate holidays and that father would have visitation with Emma in New York from the second to the third Saturdays of each month.

Pursuant to agreement between the parties, the court appointed Dr. Stanton E. Samenow to evaluate the parties and recommend a custody arrangement.  Dr. Samenow interviewed the parties and their families, conducted psychological testing, and reviewed documents relating to custody of Emma.  Dr. Samenow recommended joint legal custody with primary physical custody with mother.  Dr. Samenow recommended that father have visitation with Emma from the second Saturday to the third Saturday of each month and that the parties should alternate holidays.

After a hearing, the court stated, "I have, in fact, reviewed the appropriate sections of the Virginia Code and considered those things which the Code directs that I consider in reaching the conclusions which I have reached."  The court found as a fact that father's income was $115,000 per year, that mother's income was $33,519 per year and that the cost of child care was $785 per month; the court directed the parties to

2

calculate the appropriate child support under the guidelines. The court ordered that the parties would have joint legal custody, that father would have visitation from the second Saturday to the third Saturday of each month, and that the parties would alternate holidays.

## I.

### Child Custody

Father's principal contention is that the trial court erred in awarding primary physical custody to wife. In issues of child custody, "the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). A trial court's determination of a child's best interests "is reversible on appeal only for an abuse of that discretion, and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it." Id. (citations omitted). In reviewing the decision of the trial court, we view the facts in the light most favorable to mother, the prevailing party below. Hughes v. Gentry, 18 Va. App. 318, 321-22, 443 S.E.2d 448, 451 (1994) (citing Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

In determining the best interests of the child, the court must consider the factors enumerated in Code § 20-124.3. "As long as the trial court examines the factors, it is not 'required to quantify or elaborate exactly what weight or consideration it

has given to each of the statutory factors.'" <u>Sargent v.</u>
<u>Sargent</u>, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995)
(quoting <u>Woolley v. Woolley</u>, 3 Va. App. 337, 345, 349 S.E.2d 422,
426 (1986)).  The court's findings, however, "must have some
foundation based on the evidence presented."  <u>Woolley</u>, 3 Va. App.
at 345, 349 S.E.2d at 426.

A.

Dr. Samenow's Report

Father's first argument in support of his contention that
the court abused its discretion in awarding primary physical
custody to mother is that Dr. Samenow's report was seriously
flawed because Dr. Samenow did not spend sufficient time
gathering facts and because he made "irrational" recommendations.
The weight to be given to the opinion of an expert is a question
for the trier of fact.  <u>Street v. Street</u>, 25 Va. App. 380, 387,
488 S.E.2d 665, 668-69 (1997) (<u>en</u> <u>banc</u>).  The court did not
explicitly rely on Dr. Samenow's report, but its order
substantially tracks Dr. Samenow's recommendations.

The court appointed Dr. Samenow to evaluate the parties upon
the agreement of both parties.  Dr. Samenow traveled to New York
to conduct a home visit at father's home and interviewed six
members of father's family whom father had identified as
witnesses.  He interviewed mother for roughly six and one-half
hours and father for roughly seven and three quarters hours.  Dr.
Samenow conducted psychological tests on each party, reviewed

4

roughly fifteen letters and court documents, and conducted phone interviews with the parties' friends, counselors, and family members. Dr. Samenow prepared a detailed twenty-page report summarizing his findings and recommendations. On the basis of his observations, Dr. Samenow concluded that primary physical custody with mother would be in Emma's best interests.

Father alleges that Dr. Samenow's report was "inadequate" because he only spent a few minutes discussing father's parenting abilities with each person he interviewed. The record shows that Dr. Samenow spent roughly three hours interviewing father's family, in addition to reading letters some members of the family submitted. He spent most of his interview with father's mother discussing father's relationship with Emma, but discussed other issues with other members of father's family, as appropriate. Furthermore, at the conclusion of his investigation, Dr. Samenow asked father if he should speak with anyone else and father responded in the negative. Although Dr. Samenow met with both counsel after presenting his report, neither party complained that Dr. Samenow had failed to undertake necessary investigation. Given the completeness of Dr. Samenow's investigation and report, the trial court was within its discretion in finding the report credible.

We find no merit in father's argument that Dr. Samenow's report is internally contradictory with respect to visitation. Father claims Dr. Samenow recommended that the parties have equal

5

time with Emma in the summer, despite the fact that he made no such recommendation in his report. Father's contention is based on the testimony Dr. Samenow gave at trial. When father asked Dr. Samenow if alternating two-week periods would be appropriate, and Dr. Samenow replied, "Perhaps during the summer something like that could be done." The trial court did not abuse its discretion when concluding that this minor concession neither superseded nor created an internal inconsistency in Dr. Samenow's opinion.

### B.

### Mental Health of the Parties

Father's second argument in support of his claim that the trial court abused its discretion in awarding primary physical custody to mother is that the court failed to consider the mental health of the parties as required by Code § 20-124.3(2). Specifically, father alleges that mother has a history of emotional problems, alcohol abuse, and thoughts of suicide.

The evidence at trial showed that in the late 1980's, while mother was in college, mother's father suffered a debilitating stroke. In response to her father's stroke, mother withdrew from college for a short time and began drinking heavily. During this time, mother had some suicidal thoughts but did not entertain them seriously. After seeing a counselor, mother addressed her issues with alcohol, returned to school, and graduated on time. Mother was never diagnosed as alcohol-dependent or suicidal. Dr.

6

Samenow testified that the interviews and testing which he conducted demonstrated "[n]o basis whatsoever" for father's allegations of continuing alcoholism and suicidal thoughts. The evidence supports the trial court's implicit finding that mother was neither suicidal nor alcoholic.

## C.

### Home Environment

Father's third argument that the trial court erred in awarding primary custody to mother is that he offers a better home environment for Emma than mother. In determining the best interests of the child, the court must consider "[t]he relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, [and] the ability to accurately assess and meet the emotional, intellectual and physical needs of the child." Code § 20-124.3(3). In addition, the court must assess "[t]he needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members." Code § 20-124.3(4). Specifically, father contends his relationship with Emma, his home life, and his day care plan are superior to those offered by mother.

In addressing the parties' relationships with Emma, Dr. Samenow testified that Emma has a strong relationship with both

parties, but that the bond between Emma and mother was stronger than the bond between Emma and father. Dr. Samenow reasoned that mother had been Emma's primary caretaker and that father's move to New York had interposed a barrier in the relationship between father and Emma. Furthermore, Dr. Samenow pointed out that father had moved to New York against the advice of Emma's pediatrician. Emma's maternal grandmother testified that Emma enjoys spending time with mother and described their daily activities. Mother's friends described her relationship with Emma as "[v]ery loving" and stated that Emma had "blossomed" while living with mother. Although, as he argues, father may have had a strong bond with Emma, credible evidence supports the court's conclusion that mother had a stronger bond with Emma. We accord great deference to the trial court's findings of fact and will not disturb them unless they are plainly wrong or without evidence to support them. Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 795 (1997).

With respect to the parties' home lives, the record shows that mother rises early and plays with Emma before taking her to day care. Mother also has several hours in the evening to be with Emma. Mother resides with her father and mother in a five bedroom house with a backyard in Alexandria; the home is near a park and a school where children can play. Although father may offer a similarly appropriate home environment, credible evidence establishes that mother offers Emma a suitable home environment.

On the issue of day care, the record shows that the day care center which Emma attends offers a variety of interesting activities and that Emma enjoys attending the day care program. Dr. Samenow noted that he was impressed by Emma's day care facility and that the center has a 1:3 staff-to-child ratio. He observed that Emma and the other children "appear well looked after by an energetic, enthusiastic and devoted staff which keeps the children occupied with a series of creative and educational activities." Mother is able to pick Emma up from day care each day at 5:00 p.m. Father, on the other hand, does not return home from work until 7:30 p.m. Father testified that his employer had approved a part-time schedule, but the schedule had not been formalized at the time of trial. Based on our review of the record, we find credible evidence that mother offers a positive and appropriate day care setting for Emma.

D.

Support for the Non-custodial Parent's Relationship

Father's final argument regarding custody is that the trial court's award of primary physical custody to mother was plainly wrong in light of father's greater propensity to foster a strong relationship with the non-custodial parent. Code § 20-124.3(6) mandates that a trial court consider "[t]he propensity of each parent to actively support the child's contact and relationship with the other parent, the relative willingness and demonstrated ability of each parent to maintain a close and continuing

9

relationship with the child, and the ability of each parent to cooperate in matters affecting the child," in determining the best interests of the child.

Father testified at length that mother had denied him access to Emma.  In addition, Dr. Samenow expressed concern that mother was making "access to Emma more difficult for Mr. Vissicchio than it should be."  Dr. Samenow concluded, however, that mother would accommodate Emma's relationship with father "[b]ecause, unlike Mr. Vissicchio, Melissa Vissicchio will look in the mirror and she will acknowledge that she has done things that she shouldn't have done, and she made the statement to me that she was too possessive.  And when I talked to her again about this, she recognized that she had been too possessive."  Dr. Samenow also observed:

> Mr. and Ms. Vissicchio seem to agree on two matters.  One is that Emma should have both parents in her life.  The second is that they are generally "cordial" in their communication about Emma with respect to nearly any matter except those dealing with money or Emma's schedule when she is with each parent.  Each parent is so keenly involved with Emma that any threat to their time evokes a keen sense of potential loss. With respect to the transitions that take place at the airport, the two parents manage. Gino remarked, "We're usually pretty good in front of Emma."  He also pointed out that when either of them calls the other's home to speak with Emma, there are no problems; Emma is put on the phone.  This provides some evidence that for the sake of their daughter, the two parents can at least temporarily submerge their enmity and cooperate.

Sufficient evidence supports the trial court's decision.

10

Father does not argue that the trial court failed to consider this factor, but only that the trial court erred in not finding in his favor on the basis of this factor.  In the exercise of its discretion, the court considered this factor, weighed it with other factors, and awarded primary custody to wife.

We must decline father's invitation to weigh the evidence and award him custody of Emma.  If the decision of the trial court is supported by the evidence, "we are not permitted to substitute our judgment for that of the chancellor."  Stainback v. Stainback, 11 Va. App. 13, 23, 396 S.E.2d 686, 692 (1990).  Father has failed to demonstrate that the trial court abused its discretion.

## II.

## Visitation

Father next contends the trial court erred by granting him insufficient visitation with Emma.  In determining visitation of a non-custodial parent, as in custody issues, "the best interests of the child are paramount."  Wilson v. Wilson, 12 Va. App. 1251, 1254, 408 S.E.2d 576, 578 (1991) (citing M.E.D. v. J.P.M., 3 Va. App. 391, 396, 350 S.E.2d 215, 219 (1986)).  Determination of visitation rights is a matter of judicial discretion. Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986).  The court must, however, consider all the factors outlined in Code § 20-124.3.  Sargent, 20 Va. App. at 701, 460 S.E.2d at 599.

Father argues the trial court should have awarded him visitation for one-half of Emma's time, at least in the summer, on the ground that Emma is attached to him, that Emma has strong bonds with father's extended family, and that Dr. Samenow recommended a one-half time arrangement.  Dr. Samenow testified, however, that Emma "had to have a primary residence; a base one place or another."  He also testified that, according to Emma's pediatrician, "if there were long periods away from that home base, it would disrupt her, certainly from the standpoint of routine, and in other ways."  Finally, Dr. Samenow did not recommend a one-half time arrangement but merely stated after husband asked Dr. Samenow if alternating two-week periods would be appropriate, that, "Perhaps during the summer something like that could be done."

Thus, applying the standard of review which governs this Court's decisions, we find that the evidence in the record supports the trial court's decision to establish a primary residence for Emma.  Ordering visitation of one-quarter of Emma's time, plus alternating holidays, was within the court's discretion.  Eichelberg, 2 Va. App. at 412, 345 S.E.2d at 11.

### III.

### Child Support

Father contends the trial court erred in not deviating from the child support guidelines.  The determination of child support is a matter of discretion for the trial court, "and such awards

12

will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Young v. Young, 3 Va. App. 80, 81, 348 S.E.2d 46, 47 (1986). "A rebuttable presumption exists that the amount derived from the guidelines, Code § 20-108.2, is correct." Auman v. Auman, 21 Va. App. 275, 277, 464 S.E.2d 154, 155 (1995).

At trial, the court made findings of fact as to the income of each party and the cost of day care, and asked the parties to calculate the guidelines amount. In the final decree, the court ordered father to pay $1,495 per month in child support and ordered that father should bear his own transportation costs.

Father argues the court should have deviated from the guidelines to account for father's transportation costs. The court was aware of father's transportation costs and in the final decree, ordered him to bear those costs. Although "[a]rrangements regarding custody of the children" are a permissible basis for deviation under Code § 20-108.1(2), father cites no authority for the proposition that the trial court was required to deviate from the guidelines. In short, father has not overcome the statutory presumption that the guidelines calculation was correct. Code § 20-108.1(B); Auman, 21 Va. App. at 277, 464 S.E.2d at 155.

Father also argues the trial court erred in failing to deviate from the guidelines on the basis that father's eight-day visitation with Emma in New York would decrease mother's day care

13

cost.  Father did not present this issue to the trial court and is thus barred from asserting it on appeal.  Rule 5A:18. Furthermore, the record does not reveal any evidence that Emma's time in New York reduced the monthly day care cost.

IV.

Reservation of Right to Seek Future Spousal Support

Mother argues the trial court erred in denying her request to reserve her right to seek future spousal support in the event of a change in circumstances.  This Court has "held that where there is no bar to the right of spousal support 'it is reversible error for the trial court, upon request of either party, to fail to make a reservation in the decree of the right to receive spousal support in the event of a change of circumstances,' even though, at the time of the decree, neither party needed support." Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990) (quoting Bacon v. Bacon, 3 Va. App. 484, 491, 351 S.E.2d 37, 41 (1986)).

In her pleadings, mother requested permanent spousal support.  At trial, mother also asked for spousal support. Mother requested to reserve the right to receive spousal support in the event of a change in circumstances by including a reservation in the final decree, which she prepared.  The court deleted mother's reservation of the right to seek spousal support in the future from the final decree, but failed to explain the basis for its denial of her reservation.  Father did not argue on

14

the briefs that the denial was proper.

While mother did not explicitly request a reservation of the right to seek spousal support at trial, but rather sought only spousal support, her request for spousal support implicitly contained a request for future spousal support, as events warranted, as well as a request for immediate support.  Finding no legal barrier to spousal support for mother, we conclude that the court erred in refusing her request to reserve the right to receive spousal support in the event of a change in circumstances.  <u>Blank</u>, 10 Va. App. at 4, 389 S.E.2d at 724

(citing <u>Bacon</u>, 3 Va. App. at 491, 351 S.E.2d at 41).  We remand so that the circuit court may enter an appropriate order.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>