COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Huff and Senior Judge Coleman
Argued at Richmond, Virginia


SHARI SIMS-BERNARD
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2090-12-2                      JUDGE ROBERT P. FRANK
                                                    OCTOBER 8, 2013
STEPHEN P. BERNARD


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Harold W. Burgess, Jr., Judge

William G. Shields (The Shields Law Firm, on briefs), for appellant.

Kimberlee Harris Ramsey; Scott D. Landry, Guardian *ad litem* for
the minor children (John H. Taylor; FloranceGordonBrown; Duty,
Duty & Landry, on brief), for appellee.


Shari Sims-Bernard, mother, challenges the trial court's ruling that awarded sole legal

custody to Stephen Bernard, father, and that mother's visitation be supervised.  On appeal, mother

assigns error to the sufficiency of the evidence in five separate assignments of error.  Mother also

claims error to the trial court's failure to order family and psychological review of the children and

the trial court's authorizing Child Protective Services (CPS) to determine the amount of contact

mother has with the children.  For the reasons stated, we affirm the judgment of the trial court.

BACKGROUND

On appeal, we view the evidence in the light most favorable to father, as the prevailing party

below.  Brown v. Burch, 30 Va. App. 670, 681, 519 S.E.2d 403, 408-09 (1999).

By order of December 22, 2010, mother was awarded joint custody with father of the two

minor children born of the marriage, with primary physical custody to father.  Mother was granted

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

specific visitation. The children, both girls, were twelve and thirteen years old at the time of the September 17, 2012 hearing.

In that order the trial court recalled mother's prior diagnosis of "Delusional Disorder, Jealous Type" and the court still perceived "questionable behavior" on mother's part. The trial court concluded mother "has ways to go in her treatment." As a result, the trial court ordered mother to continue counseling with Mario Gomez, M.D., and Denis Kilgore, a Licensed Clinical Social Worker and Ph.D. in social work, and to follow all treatment recommendations. The children were ordered to continue counseling. The parents were ordered to participate in co-parent counseling. It was further ordered that neither parent disparage the other in the children's presence, "nor discuss disputed issues with the children, nor discuss the divorce litigation." Mother was also ordered not to discuss with the children her perceived fear of the father.

Based on a complaint made to CPS that the children were underweight and malnourished,[1] mother filed a motion for a change of custody and to award mother full custody of the children. The children's guardian *ad litem* moved the trial court to modify the December 22, 2010 order to award sole legal custody to father and to suspend or restrict mother's visitation.

Mother had asked for an expedited hearing and for an expedited medical emergency hearing, but the trial court denied those motions, finding "no exigent medical circumstances exist at this time." Mother also moved the court for a family evaluation, requesting father, father's current wife, and the children submit to physiological and psychiatric examinations, in particular "to examine the suitability of the home . . . and the methods of discipline employed by the Bernards

---

[1] After an investigation, CPS determined the charge was unfounded. Instead, CPS determined that mother was an alleged abuser/neglector of the children. This opinion was based on "[t]he feelings that the girls had that they were not safe in their own home appeared to be coming from their mother . . . and their worries and concerns about their health also were coming from [their mother]."

. . . ." The trial court, by order of September 17, 2012, took the motion under advisement "pending the evidence presented at the upcoming scheduled hearing . . . ."

At the September 17, 2012 hearing, Dr. Denis Kilgore testified he saw nothing that would prevent mother from seeing the children or having contact with them. He further opined mother should not be denied additional visitation or custody. However, Dr. Kilgore conceded he had never seen the children nor observed their interaction with mother. Kilgore, on cross-examination, admitted his opinion was based solely on mother's self-reporting.

Dr. Leigh Hagan, Ph.D., who saw mother four times between 2010 and 2012, opined that mother was entitled to greater access to the children. Dr. Hagan qualified his opinion by indicating he had not seen the children.

Mother called two neighbors who both testified mother was an excellent mother who never spoke inappropriately of father.

Mother testified of her close relationship with the girls and denied saying anything derogatory about father. Specifically, she denied telling the girls that father beat her or raped her, that father looked at pornography and the girls should keep their bedroom door closed, and that father is paying off everyone involved in the litigation. The trial court rejected mother's testimony, as well as the testimony of Drs. Kilgore and Hagan.

Father testified that the girls were earning As and Bs in school, and were seen by the pediatrician for regular checkups and illnesses, in addition to regular sports physicals. They were within their normal height and weight ranges for their respective ages. Father also testified that the reason he called the police to his home was because one of the girls was "out of control" and was slamming doors and being physically abusive, striking father. The cause of this outburst was that father caught her with a cell phone which father had prohibited. He testified that he does not allow

the children to have free access to cell phones because they are not responsible enough and that they would call their mother incessantly.

Father also testified that the children's behavior would change upon returning home from visitation with their mother. They would often be withdrawn and would not speak to anyone.

Jamie Bernard, father's present wife, confirmed father's description of the girls' behavior upon returning from visitation with mother. She also testified she saw mother at a softball game use a key to scratch father's automobile. Mother's attendance at the game also violated the December 22, 2010 court order which specifically barred mother from attending extracurricular activities unless such activities occurred during scheduled visitation.

Katie Bernard, the parties' adult child, characterized father's relationship with her two sisters as "normal." She never heard father disparage mother. Katie heard mother on several occasions tell the children they were too skinny and that father beat the mother. She heard her mother tell the girls their father watched pornography and that the girls should "watch out" for him and close their bedroom doors when they change clothes. Katie also confirmed that mother, in front of the girls, said father "bought off" everyone. Katie noticed that the two girls, upon returning from visitation with mother would be hostile, rude, and non-talkative.

By its letter opinion dated September 24, 2012, the trial court made a number of factual findings: the children were not malnourished; the mother's thinking and conduct towards father and the children are not normal; and mother suffers from "some mental abnormalities . . . ." Mother's "continued agenda of sabotage" has thwarted father's role as primary custodian of the children.

The trial court accepted Katie Bernard's testimony that mother continues to degrade father to the children, telling them one child is malnourished, that father has denied them food, that father had beaten mother, that father used child pornography, such that the daughters should keep their bedroom doors shut when father is present, and that father had "paid off" people to win custody.

The court further found the children are rude and disrespectful to father when they return from visitation with mother and that both girls expressed a desire to live with mother. Further, the court opined "the court is convinced that unless [mother] is stopped the girls will eventually be harmed emotionally." The court concluded that mother has not changed her conduct. While she has participated in therapy, "she has not been able to internalize what she has learned in these sessions." The court concluded that the girls be "isolated from [mother's] vitriol against [father]."

Responding to mother's motion to clarify the court's ruling, the court, in a supplemental opinion letter dated September 27, 2012, further found that the DSS, through CPS, has the full authority to determine how much contact mother is to have with her daughters through supervised visitation.

The final custody and visitation order, entered October 16, 2012, essentially repeated the court's factual findings in the September 24, 2012 opinion letter. The court (1) denied mother's request for expanded visitation; (2) awarded sole legal custody to father; (3) awarded mother supervised visitation to be scheduled and modified, if needed, by CPS; (4) CPS is given full authority to determine how much contact mother is to have with the children; and (5) CPS is to have the final decision on the supervision provider.

This appeal follows.

ANALYSIS

Assignments of Error 2 through 6 – Sufficiency

Mother argues the trial court abused its discretion in substantially reducing her visitation with her daughters. Specifically, she contends that no evidence was presented that: 1) she suffered from a mental illness that was harmful to her children; 2) she sabotaged father's parenting; 3) the children's preference to reside with her was not in their best interests; 4) her behavior will

eventually be emotionally harmful to the children; and 5) supports the trial court's decision to grant sole custody to father with supervised visitation to mother.

"In issues of child custody, 'the court's paramount concern is always the best interests of the child.'" Vissicchio v. Vissicchio, 27 Va. App. 240, 246, 498 S.E.2d 425, 428 (1998) (quoting Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990)); see Code § 20-124.2(B). "Because the trial court heard the evidence at an *ore tenus* hearing, its decision 'is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it.'" Piatt v. Piatt, 27 Va. App. 426, 432, 499 S.E.2d 567, 570 (1998) (quoting Venable v. Venable, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986)). "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to an appellate court with a presumption that the law was correctly applied to the facts." Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995).

While mother assigns five errors to the trial court's findings regarding the change in visitation, she essentially argues no evidence was presented to support the trial court's ruling to drastically limit visitation with her children. We disagree with appellant.

After hearing the evidence, including a private conversation with the two girls, the trial court determined that the mother's thoughts and conduct towards father and the children are abnormal. The court also concluded that the mother had an agenda of sabotage and has tried to obstruct father as the children's primary custodian. Central to the trial court's ruling is mother's "mental abnormalities" in her attitude towards father, manifested by her disparaging father in front of the children and her illusory thoughts concerning father's behavior. We find evidence in the record to support these findings.

Evidence presented showed that mother exhibited bizarre behavior, displaying signs of paranoia and destructive tendencies and basically trying to poison the children against their father. In addition, the social worker from CPS testified that after investigating an alleged complaint

- 6 -

against the father, CPS determined that the mother is "an alleged abuser and neglector."[2] Thus, we find evidence to support a finding that mother has a mental illness which has impacted her parenting ability.

Mother testified of her close relationship with her daughters and denied allegations of her saying anything derogatory regarding the girls' father. However, the trial court was at liberty to disregard mother's testimony. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The trier of fact is not required to accept a witness' testimony, but instead is free to "rely on it in whole, in part, or reject it completely." Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).

The trial court properly considered and weighed the girls' preference to live with their mother and chose not to accept their wishes. We find no error. "[T]he wishes of a child who has reached the age of discretion, though not controlling, should be considered [by the trial court] and given appropriate weight." Bailes v. Sours, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986). See Code § 20-124.3(8) (In determining the best interests of the child, the court shall consider "[t]he reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference[.]").

The trial court conducted a private, yet supervised, interview with the girls. Despite that the girls communicated a desire to live with their mother, the trial court expressed that it weighed this evidence "in light of all the evidence" and found that their preference was not reasonable. Based on

---

[2] An affidavit prepared by the social worker was admitted for the purpose of showing that she spoke with the children and not for the truth of what was contained therein. However, she testified at trial and her sworn trial testimony paralleled the information contained in the affidavit.

the foregoing evidence, we find no abuse of discretion in the court's refusal to follow the children's wishes.

Mother contends there was no evidence that "unless [mother] is stopped," the girls will be harmed emotionally. The trial court found that mother's behavior will eventually lead to a damaged relationship with their father and a "skewed vision of men in general." Based upon father's and stepmother's testimony that the girls had a change in attitude whenever they returned from a visit with their mother, it is clear that mother had an agenda to undermine their relationship with their father. Testimony from their sister Katie further confirms that mother harbored derogatory opinions of their father and expressed those thoughts in front of the girls. Additionally, evidence was presented that one of the daughters was already exhibiting disrespectful behavior that was influencing the other child. We find no error in the trial court's conclusion that mother's continued negative influence could potentially damage their relationship with their father.

Mother argues that the trial court erred in granting her supervised visitation. She contends that she successfully proved a change in circumstances that affects the well-being of the children and that the trial court erred in limiting her visitation rather than expanding it. Father responds that the change of circumstances supports the finding of sole custody to father.

"[T]he parent seeking to obtain a transfer of custody bears the burden to show a change in circumstances following the most recent custody award." Hughes v. Gentry, 18 Va. App. 318, 322, 443 S.E.2d 448, 451 (1994) (citations omitted). "The test [for modifying custody] . . . has two prongs: first, has there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interests of the children." Keel v. Keel, 225 Va. 606, 611, 303 S.E.2d 917, 921 (1983).

As previously stated, while mother presented evidence of a strong, positive relationship with her daughters, the court rejected such testimony. The court accepted father's evidence that mother

- 8 -

continued to display aberrant behavior that constituted a negative change in circumstances that was not in the best interests of the children.

From this record, we find ample evidence to support that mother suffered from a mental illness that was harmful to her children, she sabotaged father's parenting, the children's preference to reside with her was not in their best interests, mother's behavior will eventually be emotionally harmful to the children, and the trial court properly granted sole custody to father with supervised visitation to mother.

CPS Authority Over Visitation

Mother contends the trial court erred in conferring upon CPS authority to set the terms, conditions, and extent of visitation, which, she argues, is an unauthorized delegation of judicial authority.

Rule 5A:20(e) requires that an appellant's opening brief contain "'[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error.'" Unsupported assertions of error 'do not merit appellate consideration.'" Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008).

Mother cites article six of the Virginia Constitution and Holland v. Johnson, 241 Va. 553, 403 S.E.2d 356 (1991), as authority for her assignment of error. However, mother does not offer any theory of how either the Constitution or Johnson applies to the facts and issues in this case. "While we may speculate as to how [appellant's] meager authority relates to h[er] argument, the need for such guesswork on our part necessarily means [appellant] has not complied with the rule." Sfreddo v. Sfreddo, 59 Va. App. 471, 494, 740 S.E.2d 145, 157 (2012).

Where a party's failure to present authority is significant, we may treat an assignment of error as waived. Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008). We find

appellant's unsupported assertion of error is significant and treat this assignment of error as waived.

### Motion for Evaluation

Mother contends the trial court erred by failing to order a family and psychological review of the parties' children.[3] Mother filed a motion for family evaluation on August 10, 2012 requesting that father, his present wife, and the two children submit to physiological and psychiatric examinations pursuant to Code § 63.1-248.14. By order of September 17, 2012, the trial court took the matter "under advisement pending the evidence presented at the upcoming hearing . . . ." Mother never renewed the motion nor asked the trial court to rule on the motion. The trial court never granted or denied the motion. We have reviewed the file and have found no order addressing the mother's motion.

Therefore, mother has waived this claim because she was required to request a ruling from the trial court and she failed to do so. Because the record does not show that the trial court ruled on appellant's argument, there is no ruling of the trial court for this Court to review on

---

[3] In her brief, mother argued the denial of the evaluation deprived her of needed discovery to "amass the evidence necessary to show the condition under which the girls lived at [father's] home . . . ." Mother did not make the "discovery" argument below, nor is it part of this assignment of error. Rule 5A:18 provides, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." Thus, before we may address an argument on appeal, an accused must present the specific argument to the trial court that he wishes to raise on appeal. See Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*).

Further, mother did not include this argument in her assignments of error. Rule 5A:20(c) requires us to hold that this issue is waived because it is not part of appellant's assignments of error. See Winston v. Commonwealth, 51 Va. App. 74, 82, 654 S.E.2d 340, 345 (2007) (holding that because an appellant did not include an argument in his questions presented (now assignments of error), the Court would not address it on appeal); see also Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001) (declining to consider an issue on appeal because it was not "expressly stated" in the questions presented (now assignments of error)).

appeal. See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); Fisher

v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993).

ATTORNEY'S FEES ON APPEAL

Father asks for an award of attorney's fees and costs to pursue this appeal.[4]

> The rationale for the appellate court being the proper forum
> to determine the propriety of an award of attorney's fees for efforts
> expended on appeal is clear. The appellate court has the
> opportunity to view the record in its entirety and determine
> whether the appeal is frivolous or whether other reasons exist for
> requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

After considering the record in this case, we grant father's request for appellate fees. We

view all of mother's assignments of error as without merit. Upon all the issues properly before

this Court, she challenged findings of the trial court that are clearly supported by the evidence.

On the remaining issues, she failed to preserve the arguments for appellate review. We have no

reluctance imposing fees in such circumstances. Fox v. Fox, 61 Va. App. 185, 208, 734 S.E.2d

662, 673 (2012).

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. We remand to the

trial court to award father attorney's fees associated with his defense of all of mother's

arguments on appeal, and for fees and costs associated with the remand.

Affirmed and remanded.

---

[4] Since this matter did not arise from the juvenile and domestic relations district court, Code § 16.1-278 does not govern the award of attorney's fees. See Lynchburg Division of Social Services v. Cook, 276 Va. 465, 484, 666 S.E.2d 361, 371 (2008).