COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Raphael
Argued by videoconference

MARILYN DOLSEY MORGAN

MEMORANDUM OPINION[*] BY
v. Record No. 0627-21-3                     JUDGE STUART A. RAPHAEL
SEPTEMBER 13, 2022

LYNCHBURG DEPARTMENT
OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

M. Paul Valois (James River Legal Associates, on briefs), for
appellant.

David W. Shreve (Curtis L. Thornhill, Guardian *ad litem* for the
minor children, on brief), for appellee.


Appellant challenges the final order of the circuit court that terminated her daughter's

parental rights over appellant's two grandchildren, denied appellant's request for custody,

approved the foster-care goal of adoption, and ordered appellant to have no contact with the

grandchildren without the permission of the Lynchburg Department of Social Services (DSS).

Appellant noted an appeal to that final order but her daughter did not. Because appellant is the

grandparent—not the parent—she lacks standing to challenge the termination of her daughter's

parental rights. And appellant's remaining claims lack merit: the circuit court had subject matter

jurisdiction, and it did not abuse its discretion in denying appellant's custody petition or in

restricting appellant's contact with the grandchildren. Accordingly, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication. .

BACKGROUND

This case involves two infant sisters, A.M. and Q.M, who are the daughters of Charnell Morgan ("mother"), and the granddaughters of appellant Marilyn Morgan ("grandmother"). Grandmother appeals the circuit court's decision terminating mother's parental rights and denying grandmother's custody petition. Because those determinations were rendered after a hearing *ore tenus*, we view the evidence in the light most favorable to DSS, the party prevailing in the circuit court. *Tackett v. Arlington Cnty. Dept. of Hum. Servs.*, 62 Va. App. 296, 303 (2013).[1]

Mother previously gave birth to three older siblings of A.M. and Q.M., but her parental rights for all of them were terminated. In each instance, mother lost custody of the child due to her criminal convictions and history of substance abuse, untreated mental health problems, and homelessness. And in each case, grandmother's request for custody of the child was also denied.

Mother gave birth to Q.M. in July 2014. In December 2018, the Juvenile and Domestic Relations (JDR) District Court for the City of Lynchburg entered a consent order awarding joint physical custody of Q.M. to mother and grandmother.

When mother gave birth to A.M. on December 13, 2019, blood samples taken from mother and from A.M.'s umbilical cord tested positive for cocaine. Mother also told a social worker at the hospital that she had used cocaine during her pregnancy. On December 13 and 14, mother signed handwritten notes stating that she was giving custody of A.M. to grandmother. The second note said she was doing that "until I can get myself together." Grandmother petitioned for custody of A.M. on December 18.

---

[1] Although the record is sealed, this appeal requires unsealing certain portions to resolve the issues raised by grandmother. We unseal the record only as to those specific facts mentioned in this opinion. The rest "remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

On December 17, after receiving mother's positive toxicology results, DSS became concerned about the baby's well-being and initiated a family assessment. The next day, DSS investigator Marty Laverty conducted an unannounced visit to mother's residence, but no one was home. Laverty tried to locate mother and grandmother for the next several days by calling them and searching for a current address. Laverty and a police officer reached mother by telephone, but she refused to cooperate and hung up.

On December 20, Laverty petitioned the JDR court for an emergency removal order for A.M, which the court granted the same day. The court issued a preliminary removal order for A.M. on December 30. Over the course of the investigation, Laverty learned that Q.M. was also in grandmother's care.

Grandmother contacted Laverty on New Year's Eve and said that she had traveled to Maryland with both children to visit family for the holidays and was returning to Lynchburg on January 1. Laverty later noted that grandmother had traveled out of town when A.M. was only several days old and when five-and-a-half-year old Q.M. was recovering from pneumonia.

Laverty scheduled a home visit for January 2, 2020, at which time she told grandmother that DSS was taking emergency custody of both A.M. and Q.M. Grandmother had A.M. with her, and Laverty took custody of the baby. But Q.M. was not there, and grandmother said that "she would go to jail before" revealing the child's location. DSS searched for Q.M. but could not locate her.

On January 7, 2020, DSS obtained an emergency removal order for Q.M. DSS also asked the court to enter a preliminary protective order, along with the removal order, "so it [could] be entered into [the criminal information database] to further assist efforts in locating Q.M." The court granted that request, and grandmother was ordered to have "no contact" with Q.M. "until further order of the court." Efforts to locate Q.M. continued, with Laverty

contacting the child's school, working with the police department, and coordinating with the child's uncle.

Grandmother's attorney called Laverty on January 24 and told her that Q.M. would be at the attorney's office the next day, a Saturday. When Laverty arrived to serve the protective order and take custody of Q.M., grandmother said that the child had been "very ill" and that "something bad is going to happen if she doesn't get her medication." But when Laverty asked for the medication, grandmother had not brought it with her and would not identify what medicine was needed. (Grandmother's counsel delivered the medicine later that day.) Grandmother also had brought none of Q.M.'s clothes or belongings. Laverty served the protective order and took custody of Q.M.

On January 27, 2020, DSS obtained adjudicatory orders for both A.M. and Q.M. under Code § 16.1-241(A)(2a). The JDR court found that both mother and grandmother had "abused/neglected" the children. The orders recited that A.M. was "born substance exposed; grandmother took child from hospital and took on winter road trip with sick older child; failed to get proper care." Q.M. "was suffering from respiratory illness, asthma & pneumonia and was taken on [a] December 2019 road trip; the child cannot bathe, dress, use a toothbrush, is not potty trained, and has missed 20 days from school. Child turned over w[ith]out needed medications." DSS placed both children in the custody of the same foster parents who had adopted two of the older siblings.

At a dispositional hearing on February 24, the JDR court ordered that A.M. and Q.M. remain in DSS's custody, and the court approved the foster-care goal of "Return Home/Relative Placement" for both children. To that end, the court ordered grandmother to complete a psychological evaluation and ordered DSS to complete a home study of grandmother's residence. The court also entered a protective order preventing grandmother from contacting

- 4 -

Q.M. or A.M. except as permitted by DSS. Grandmother appealed the various orders to the circuit court.

DSS later petitioned the JDR court to terminate mother's parental rights and to modify the foster-care goal to "adoption." On December 11, 2020, the JDR court entered orders terminating mother's parental rights as to A.M. and Q.M. Mother appealed the termination orders.[2]

The circuit court consolidated the various appeals by mother and grandmother into a single proceeding. In March 2021, the circuit court conducted a two-day trial. The court heard testimony from multiple witnesses, including Laverty and grandmother. The court also heard from the foster parent, who had taken temporary custody of the children and who had adopted two of the older siblings. The foster parent described improvements in the behavioral and developmental problems previously displayed by Q.M., who was now doing well in school. A.M. was also doing well.

After taking the matter under advisement, the court issued a letter opinion noting that "[m]uch of this case turns on the credibility of the many witnesses who testified." In accordance with Code § 16.1-283(E)(i), the court found that mother's parental rights to the three older siblings had been previously terminated. The court also found, by "clear and convincing evidence," that it was in the best interests of A.M. and Q.M. for mother's parental rights to be terminated. Turning to grandmother's petition for custody, the court noted that grandmother, as a relative seeking custody, bore the burden of proving her fitness. It found that grandmother

___

[2] The record contains mother's notice of appeal of the JDR court's order terminating her parental rights as to Q.M., but it does not appear to contain her notice of appeal of the JDR court's order terminating her parental rights as to A.M. The record of the proceedings in the JDR court is jumbled and poorly organized. DSS and the circuit court acted on the assumption that mother had appealed both termination orders from the JDR court to the circuit court. For purposes of this disposition, we assume without deciding that mother timely appealed to the circuit court from the JDR court's order terminating mother's parental rights as to A.M.

failed to carry that burden and that it was instead in the children's best interests to remain in DSS's custody with the permanent goal of adoption. Finally, the court found it was in the children's best interests that mother and grandmother refrain from any contact with the children unless permitted by DSS. The court denied grandmother's motion for reconsideration and incorporated its opinion letter in a final order entered on May 21, 2021.

Mother did not appeal the final order. But grandmother did.

ANALYSIS

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). This Court presumes that the circuit court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." *Id.* (quoting *Logan*, 13 Va. App. at 128).

Although grandmother raises ten assignments of error, they can be grouped into five categories. A common theme runs through most of grandmother's claims. She argues that subject matter jurisdiction in the JDR court and circuit court depended on the emergency removal petitions—filed by DSS in December 2019 and January 2020—seeking removal of A.M. and Q.M. on the ground of abuse and neglect. The JDR court found that A.M. and Q.M. were both subject to abuse and neglect. Fast-forwarding to the final orders in the circuit court, however, grandmother points out that the circuit court made no such findings. Without a finding of abuse or neglect, she argues, the circuit court never acquired jurisdiction to adjudicate mother's parental rights, take custody of the children away from grandmother, or approve a foster-care plan of adoption.

We reject grandmother's central premise and find her remaining arguments unpersuasive.

A. *The circuit court had subject matter jurisdiction (Assignments of Error 5, 6, 8, 9, 10).*

"Subject matter jurisdiction is the authority granted to a court by constitution or by statute to adjudicate a class of cases or controversies." *Marrison v. Fairfax Cnty. Dep't. of Fam. Servs.*, 59 Va. App. 61, 67 (2011) (quoting *Earley v. Landsidle*, 257 Va. 365, 371 (1999)). "[W]hen exercising its de novo appellate jurisdiction, the circuit court has no more subject matter jurisdiction than the general district court had in that court's original proceeding." *Parrish v. Fed. Nat'l Mortg. Ass'n*, 292 Va. 44, 49 (2016). Whether the circuit court had subject matter jurisdiction is a question of law this Court reviews *de novo*. *Id.*

Grandmother offers no support for her supposition that the jurisdiction of the JDR court under Code § 16.1-241 remained limited to the abuse-and-neglect allegations supporting the original emergency removal orders. The JDR court has original jurisdiction over various matters relating to the "custody, visitation, support, control or disposition of a child." Code § 16.1-241(A). Subsection (A) lists seven categories of such matters. It is true that such jurisdiction includes jurisdiction over a child who "is alleged to be abused [or] neglected." Code § 16.1-241(A)(1). But that provision *also* grants jurisdiction over a child who is "in need of services" or "supervision." *Id*. And other provisions in subsection (A) provide jurisdiction over a child "[w]hose custody, visitation or support is a subject of controversy or requires determination," Code § 16.1-241(A)(3), as well as "[w]here the termination of residual parental rights and responsibilities is sought," Code § 16.1-241(A)(5). Thus, although the JDR court's jurisdiction here was first invoked when DSS filed the emergency removal petitions, that court also had jurisdiction to consider DSS's request to terminate mother's parental rights. "Because the circuit court's jurisdiction is 'derivative of and thus dependent upon the jurisdiction of the JDR court,' the jurisdiction of the JDR and circuit courts are equivalent." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 459 (2022) (quoting *Knight v. Ottrix*, 69

- 7 -

Va. App. 519, 526 (2018)); *see* Code § 16.1-296(I) ("In all cases on appeal, the circuit court in the disposition of such cases shall have all the powers and authority granted by the chapter to the juvenile and domestic relations district court."). And "by ruling on the termination of parental rights, the trial court had jurisdiction over the custody issue, since custody was incidental to the termination of parental rights decision." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 196 (2011) (citing Code § 16.1-244(A)).

In short, grandmother's premise that the lower courts' jurisdiction depended exclusively on an abuse-or-neglect finding has caused her various jurisdictional challenges to jump the tracks. As a result, we find that her jurisdictional assignments of error lack merit.

B. *Grandmother cannot challenge the termination of mother's parental rights (Assignments of Error 1, 6).*

Two of grandmother's assignments of error argue that the circuit court erred in terminating "the mother's parental rights of A.M. and Q.M." under Code § 16.1-283(E). That subsection provides that

> The residual parental rights of a parent . . . of a child who is in the custody of a local board or licensed child-placing agency may be terminated by the court if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated.

Code § 16.1-283(E)(i).

Grandmother does not dispute that mother's residual parental rights had been previously terminated as to the three older siblings of A.M. and Q.M. Grandmother argues, however, that A.M. and Q.M. should not have been treated as "in the custody" of DSS, Code § 16.1-283(E), when mother's parental rights were terminated. Grandmother theorizes that her *de novo* appeal to the circuit court vacated the JDR orders granting custody to DSS, so the children were no

longer in DSS's legal custody when the circuit court terminated mother's parental rights, even though the children were in DSS's physical custody.

Grandmother's theory fails on two independent grounds. First, while it is true that an appeal from the JDR court provides *de novo* review in the circuit court, simply noting the appeal alone does not vitiate the JDR court's ruling giving DSS interim custody over the children. Code § 16.1-298—which grandmother fails to cite—provides that "an appeal . . . shall not suspend any judgment, order or decree of the juvenile court nor operate to discharge any child concerned or involved in the case from the custody of the . . . agency to which the child has been committed unless so ordered." Code § 16.1-298(A). That provision was "enacted to provide continuity and stability in cases of children who are the subjects of litigation." *Walker v. Dep't of Pub. Welfare of Page Cnty.*, 223 Va. 557, 561 (1982). Thus, A.M. and Q.M. remained in DSS's custody from the time the children were removed from grandmother's care in January 2020.

Second, grandmother lacks standing to contest the final order terminating mother's parental rights, an order that mother did not appeal. We held in *Tackett* that the grandmother there lacked standing to challenge the termination of the mother's parental rights. 62 Va. App. at 325. We reasoned that, because the "[g]randmother had not adopted [the child]," she "was not the parent possessing the right to the child." *Id.* To be sure, the grandmother had standing to challenge decisions affecting her own rights, such as the denial of her petition for custody. *Id.* at 326. Grandmother here likewise has standing to challenge the denial of her custody petition. But as in *Tackett*, grandmother cannot challenge the termination of her daughter's parental rights. *Id.* at 325-26.

Grandmother conceded at oral argument that *Tackett* prevents us from reaching her claim that the circuit court misapplied Code § 16.1-283(E)(i). She argues instead that *Tackett* was "improperly decided."

- 9 -

But we are not free to revisit *Tackett*. Under the interpanel-accord doctrine, the decision of a prior panel of this Court "'becomes a predicate for application of the doctrine of stare decisis' and cannot be overruled except by the Court of Appeals sitting en banc or by the Virginia Supreme Court." *Butcher v. Commonwealth*, 298 Va. 392, 397 n.6 (2020) (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73 (2003)). Because we are bound by *Tackett*, we find that grandmother lacks standing to challenge the termination of mother's parental rights.

### C. The circuit court did not abuse its discretion in denying grandmother custody of the children (Assignment of Error 4).

Having decided to terminate mother's parental rights, the circuit court had to determine whether to grant custody of the children to DSS or to "a person with a legitimate interest." Code § 16.1-283(A). Grandmother argues that the circuit court erred by not granting custody of the children to her.

Code § 16.1-283(A1) makes clear that grandmother bore the burden of proving her fitness to take custody of the children. That subsection bars a circuit court from transferring custody to a person with a legitimate interest unless the court finds,

> based upon a preponderance of the evidence, that such person is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; and the order shall so state.

Code § 16.1-283(A1). The trial court found, however, that grandmother

> is not an individual who is willing and qualified to receive and care for the children; is not an individual who is willing to have a positive, continuous relationship with the children; is not an individual who is committed to providing a permanent, suitable home for the children; and is not an individual who is willing and has the ability to protect the children from abuse and neglect.[3]

---

[3] In listing those four statutory factors, the circuit court's letter opinion cited both Code § 16.1-282.1(A1), governing custody determinations in permanency-planning hearings for

- 10 -

The court found instead that it is in the children's best interests to remain in DSS's custody, with the permanent goal of adoption.

When deciding matters of child custody, "the court's paramount concern is always the best interests of the child." *Armstrong v. Armstrong*, 71 Va. App. 97, 103 (2019) (quoting *Vissicchio v. Vissicchio*, 27 Va. App. 240, 246 (1998)). The trial court's determination of the child's best interests will be reversed only for an abuse of discretion and will not be set aside unless "plainly wrong or without evidence to support it." *Id*. at 103-04 (quoting *Vissicchio*, 27 Va. App. at 246).

Grandmother has failed to show that the circuit court abused its discretion by finding against her. To the contrary, the court's findings were supported by the evidence adduced at trial. April Watson, DSS's supervisor of foster care and adoption, and the interim department director, testified that DSS had multiple concerns about placing the children in grandmother's custody based on the agency's two decades of experience with the family. When mother's parental rights to each of the three older siblings were terminated, grandmother was found unsuitable to take custody. Each time, grandmother had failed to complete the required psychological evaluation or the parenting services, visitation, and one-on-one parenting instruction that DSS had offered. Likewise, for A.M. and Q.M., grandmother failed to participate in counseling services, parenting services, or the required psychological evaluation "throughout the life of this case." Watson added that grandmother had failed over the years to maintain stable housing arrangements. She had been homeless for a time. She was the subject of a level-two finding of neglect stemming from the lack of proper housing for one of the older siblings. Of the two housing options that grandmother said she had for A.M. and Q.M., one was

children in foster care, and Code § 16.1-283(A1), governing custody determinations following the termination of parental rights. Morgan does not dispute that the factors are the same in both statutes.

a condemned property that was unfit for habitation, and the other was an apartment leased by mother, who was incarcerated. Grandmother had a history of living with unstable individuals. She lacked financial stability. And Watson expressed concern that grandmother could not meet the special needs of Q.M., who is autistic. Grandmother, for instance, failed to ensure Q.M.'s school attendance; while in grandmother's care, Q.M. had missed forty days of school—twenty-four excused absences and sixteen unexcused absences.

Taken in the light most favorable to DSS, these facts suffice to show that the circuit court did not abuse its discretion in applying the statutory factors and denying grandmother's request for custody of the children.

### D. *The circuit court did not abuse its discretion in ordering that grandmother have no contact with the children without DSS's approval (Assignment of Error 7).*

In order "to protect the children's life, health, safety, and normal development," the circuit court ordered that mother and grandmother have no contact with A.M. or Q.M. unless agreed upon by DSS. The same facts supporting the circuit court's denial of custody to grandmother support that protective order. As with the custody ruling, grandmother has failed to show that the trial court abused its discretion in limiting her contact with the children or that the court's decision was plainly wrong or without evidence to support it. *Armstrong*, 71 Va. App. at 103-04.

We reject grandmother's claim that the trial court could restrict her contact with the children only if it found that grandmother had previously abused or neglected the children (or exposed them to a risk of abuse or neglect) under Code § 16.1-278.2(A). That code section specifies the procedures for a dispositional order following a hearing on a preliminary removal order for an abused, neglected, or abandoned child. Grandmother cites no authority to suggest that the statute limits the trial court's discretion to regulate the visitation privileges of a relative

- 12 -

found unfit to have custody over the child once the trial court terminates parental rights and approves the permanent goal of adoption.

### E. The demurrer rulings are unreviewable (Assignments of Error 2, 3).

Lastly, grandmother seeks to undo the final order by arguing that the circuit court erred in overruling her demurrers to the emergency petitions, filed in the JDR court in December 2019 and January 2020, for DSS to take custody of A.M. and Q.M. Grandmother argues that those original petitions "were insufficient as a matter of law to allege that either A.M. or Q.M. were abused or neglected." It is unclear what the remedy would be if grandmother were correct that the circuit court should have sustained her demurrers to DSS's removal petitions. At oral argument, grandmother said that she is asking us to undo everything in the final order and to return the case to the circuit judge to re-evaluate the best interests of the children.

We find, however, that the circuit court's ruling denying grandmother's demurrers to DSS's emergency-removal petitions has merged into the final order, thereby mooting grandmother's challenge to the interim rulings.[4] The final order, entered after a full trial on the merits, terminated mother's parental rights, denied grandmother's petition for custody, approved the foster-care goal of adoption, and barred mother and grandmother from contacting the children without DSS's permission. The interim ruling denying grandmother's demurrers to the removal petitions—even if the circuit court erred—is not reviewable given that final disposition.

The original orders by the JDR court in January 2020, approving DSS's taking custody of the children, are analogous to a ruling on a preliminary injunction, entered before a trial on the

---

[4] We are required to raise this mootness issue *sua sponte*, even though none of the parties has identified it. *See Bristol Dept. of Soc. Servs. v. Welch*, 64 Va. App. 34, 42-43 (2014) ("Where there is no actual controversy, the case will be dismissed as moot. And even, as is the case here, 'when the parties do not raise the issue of mootness, appellate courts should raise the issue *sua sponte* when the record does not present a live case or controversy.'" (citation omitted) (quoting *Baldwin v. Commonwealth*, 43 Va. App. 415, 421-22 (2004))).

merits of a permanent injunction. "Generally, an appeal from the grant of a preliminary injunction becomes moot when the trial court enters a permanent injunction, because the former merges into the latter." *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc*., 527 U.S. 308, 314 (1999). "[E]ven if the preliminary injunction was wrongly issued (because at that stage of the litigation the plaintiff's prospects of winning were not sufficiently clear, or the plaintiff was not suffering irreparable injury) its issuance would in any event be harmless error." *Id.* at 314-15. The decision on the final injunction establishes the underlying merits. "Hence, it is reasonable to regard the preliminary injunction as merging into the final one: If the latter is valid, the former is, if not procedurally correct, at least harmless." *Id.* at 315.

We have applied similar principles in analogous contexts. For instance, we have declined to reach a father's challenge to a circuit court's order approving a foster-care plan of adoption when the father failed to appeal the final order terminating his parental rights. *Najera v. Chesapeake Div. of Soc. Servs*., 48 Va. App. 237, 240-41 (2006). We said in *Najera* that "a termination decision, if final and unappealed, moots any justiciable contest over a prior decision to approve DSS's foster care plan recommendations." *Id.* at 241. We noted that, even if the challenge had legal merit, it would not matter because the parent no longer had any legal rights to protect. *Id*. at 242; *see also Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 265 n.3 (2005) (holding that the decision to affirm the termination of parental rights mooted the parent's challenge to the foster-care goal of adoption because affirmation of "the termination order necessarily subsumes this aspect of his appeal").

The same principles apply here. The circuit court determined after a full trial on the merits that the evidence supported terminating mother's parental rights, denying grandmother's custody petition, approving the foster-care goal of adoption, and barring mother and grandmother from contacting the children without DSS's permission. Any possible error at the outset in the

decision of the JDR court to grant emergency removal of the children, or in the circuit court's decision not to undo that ruling, is now irrelevant considering the final disposition on the merits.

## CONCLUSION

In short, grandmother has no valid basis to challenge the circuit court's ruling that terminated mother's parental rights. And there is no error in the circuit court's order denying custody to grandmother or in restricting her visitation.

*Affirmed.*